**William Luther MILLER, Petitioner,**

v.

**Lynn BOMAR, Warden, Tennessee State Penitentiary, Nashville, Tennessee, Respondent.**

**Civ. A. No. 3238.**

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 12, 1963.

Supplemental Order Nov. 15, 1963.

John Kelley, Jr., Nashville, Tenn., for petitioner.

Henry C. Foutch, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for respondent.

WILLIAM E. MILLER, Chief Judge.

In this habeas corpus action, the petitioner, William Luther Miller, attacks the legality of his confinement in the Tennessee State Penitentiary under a sentence to life imprisonment as a habitual criminal imposed by the Criminal Court of Knox County, Tennessee. The principal contentions are that the petitioner's constitutional rights to due process and equal protection were infringed (1) by the trial court's denial of his statutory and absolute right of appeal,

(2) by his counsel's failure to prosecute such appeal, and (3) by the Tennessee Supreme Court's failure to take some action to protect the petitioner's rights after his bill of exceptions was filed in that Court.

Since the petition alleged facts which, if true, would present serious constitutional questions, the Court appointed John W. Kelley, a member of the Nashville Bar, to represent the petitioner and set the case for hearing. The material facts developed by the evidence are as follows:

The petitioner was charged in an eight-count indictment with burglary, housebreaking and larceny, receiving and concealing stolen property, and with being a habitual criminal. At the conclusion of the trial on February 8, 1956, the jury found the petitioner guilty of grand larceny and fixed his punishment at five years' imprisonment and, in addition, found him to be a habitual criminal. The trial court, following its local rule, deferred imposition of sentence pending the filing and disposition of a motion for a new trial. On February 18, 1956, such motion for a new trial was heard and overruled and the trial court, pursuant to Tennessee's habitual criminal act (T.C.A., Sec. 40–2801 et seq.), imposed the life sentence which the petitioner is now serving. Thereupon, the petitioner prayed and was granted an appeal to the Supreme Court of Tennessee and was allowed sixty days within which to perfect and file his Bill of Exceptions.[1] He was then returned to the Knox County jail. On February 22, 1956 the petitioner appeared in open court with his attorney and withdrew the appeal prayed for and granted on February 18, whereupon the court ordered "that transcript issue to the Penitentiary with sentence in this case to begin December 9, 1955, giving credit to the defendant for time spent in jail since indictment."[2] On the following day—February 23—the petitioner was released from the Knox County jail and taken to the state prison at Petros, Tennessee where he was lodged overnight, and on February 24, he was transferred to the State Penitentiary at Nashville.

Shortly after the petitioner entered the penitentiary, some of his relatives sought advice from Earl Leming, an attorney of the Knoxville Bar who had not been connected with the case. Mr. Leming's advice to these relatives was summarized in his letter to the petitioner's mother dated April 9, 1956, as follows:

"As I have told you today and last week, I will not guarantee nor in any way encourage you to believe that your son William Luther Miller can be released from his life sentence as an habitual criminal because I have not seen or read the record in the case.

"However, if there are errors in the Court's proceedings, I do advise you that the best way to preserve such errors for review is to have the Court Reporter to write up the record and file the same as a bill of exceptions within sixty days of the date of his motion for a new trial was denied, thus preserving to him the right to seek a Writ of

---

1. Under T.C.A., Sec. 27–110 and 27–111, the bill of exceptions, duly authenticated and approved by the trial judge, must be filed within thirty days after the entry of the order overruling the motion for a new trial, unless within said thirty-day period the trial court grants an extension of time, not exceeding an additional sixty days, for the filing of such bill of exceptions.

2. The petitioner testified that his last appearance before the trial court was on February 18, 1956 when the motion for a new trial was overruled and the appeal granted; that he never authorized his attorneys to withdraw the appeal; and that his attorneys led him to believe that an appeal would be taken. However, statements of the petitioner's two trial attorneys and the affidavit of the trial judge which were admitted as evidence establish beyond any reasonable doubt that the petitioner freely, voluntarily and understandingly withdrew the appeal.

Error, even though the time for an appeal has expired."

The petitioner's relatives thereupon paid the court reporter's fees for preparation of the transcript of the trial proceedings.

On April 18, 1956, two days before the expiration of the sixty-day period allowed by the trial court's order of February 18, 1956, Mr. Leming submitted to the trial judge a bill of exceptions containing the transcript of the trial proceedings and a copy of the motion for a new trial which had been overruled on February 18. After some discussion, the trial judge prepared and attached to the bill of exceptions his certificate of approval, as follows:

"The Court overruled the defendant's motion and the defendant prayed an appeal. Which the Court denied at this time, and the defendant duly excepted to the Court's ruling.

"The defendant tenders this Bill of Exceptions to the judgment of the Court overruling its motion, which is signed and sealed and ordered to be, and is, made a part of the record in the case."

The bill of exceptions was thereupon timely filed with the clerk of the court, and, as will be hereinafter shown, all of the petitioner's rights to an appellate review by writ of error were thereby preserved.

Although the trial judge did, for reasons of his own which are fully set forth in his affidavit,[3] inject into the certificate a gratuitous and sua sponte ruling that an appeal was being denied at that time, such ruling was without legal effect. In Tennessee, the defendant's rights to appellate review are governed by statute and are in no wise contingent upon discretionary action by the trial court. These appellate rights and the applicable provisions of the Tennessee Code were summarized by this Court in Coffman v. Bomar, D.C., 220 F.Supp. 343, 346, as follows:

"Under the laws of Tennessee, after a motion for a new trial is overruled in a criminal case, a defendant is entitled as a matter of right to an appeal in the nature of a writ of error to the Supreme Court of the state. T.C.A. § 40–3401. As a condition to such an appeal, however, an appeal bond must be filed or the pauper oath taken within thirty days from the date of the order overruling the new trial motion, or within an extended period not exceeding thirty days if the application for the extension is made within the original thirty-day period. T.C.A. § 27–312. A defendant may

3. The affidavit of the trial judge states:

"The next thing I knew [after petitioner's withdrawal of the appeal on February 22] was that a few days before the expiration of the original sixty days time given for the filing of the bill of exceptions, the record shows this to be April 18, 1956, an attorney, Mr. Earl Leming, who was not one of defendant's trial attorneys, and so far as I know was not then representing the defendant, came into my office and presented me with a bill of exceptions in his case and asked me to sign it. I first refused to sign it, telling him that the defendant had already withdrawn his appeal and was in the penitentiary. He stated to me that the defendant's people had paid for the record and he wanted it filed anyway, so I signed it and expressly wrote on it in words to the effect that no appeal was allowed at this time.

"He filed it with the Clerk, with my understanding that it was just to remain in the Clerk's office. Thereafter, a new and inexperienced deputy Clerk filed it in the Supreme Court without order and without the knowledge of myself and as I understand, without the knowledge of Hon. Tolbert Taylor, Clerk. The sending of it to the Supreme Court and filing it there by this deputy was a mistake and was not authorized.

"The defendant with knowledge of all the facts and the consequences having with consent and in the presence of his attorneys personally withdrawn his appeal and asked to be sent to the penitentiary some fifty odd days theretofore is the reason, I wrote on this bill of exceptions no appeal is allowed at this time."

also appeal a criminal conviction as a matter of right to the Supreme Court by filing the record for a writ of error, even though he has failed to file an appeal bond or to take the pauper oath within the time required to perfect an appeal in the nature of a writ of error. T.C.A. §§ 40–3402 and 27–601, 607. The writ of error may be moved for and obtained in the appellate court, or issued by the clerk of the appellate court in vacation, upon the filing of the transcript of the record in his office. T.C.A., § 27–602. The application to the clerk for issuance of the writ may be made within one year after the order appealed from, T.C.A., § 27–604, or within two years if the application is made to the appellate court or a judge thereof, T.C.A., § 27–605. Under state law, an appeal in the nature of a writ of error or an appeal by writ of error may be made upon the technical record alone, or both upon the technical record and the transcript of the evidence, if such evidence has been preserved by the timely filing in the trial court of a bill of exceptions. The bill of exceptions, duly authenticated and approved by the trial judge, T.C.A., § 27–110, must be filed within thirty days after the entry of the order overruling the motion for a new trial, unless within said thirty-day period an extension of time has been obtained from the court for filing such bill of exceptions, not to exceed an additional period of sixty days. T.C.A., § 27–111."

If the application is made to the clerk within the one-year period, the writ issues automatically and as a matter of right. If made to the Supreme Court or a justice thereof after the expiration of one year and before two years have elapsed, the issuance of the writ is discretionary. Sullivan v. Eason, 5 Tenn. App. 137; Arkansas Fuel Co. v. Tanner, 195 Tenn. 553, 260 S.W.2d 286.

It is thus clear that, despite the trial judge's attempt to deny an appeal at the time he approved the bill of exceptions, the timely approval and filing of the bill of exceptions actually and effectively preserved all of the petitioner's rights to appellate review.[4]

Although no further steps were taken to perfect the appeal, an inexperienced deputy clerk, through inadvertence and without authorization, forwarded the bill of exceptions to the office of the Supreme Court Clerk where it was marked filed on May 10, 1956. When the technical record and other documents requisite to an appeal were not forthcoming, the Clerk placed the bill of exceptions in the Court's archives. Sometime later, Mr. Leming examined the bill of exceptions. He then informed the petitioner's relatives what his fee would be for prosecuting the appeal, but they did not retain him and apparently pursued the matter no further.

The petitioner testified that after entering the penitentiary he wrote to relatives in Knox County in an effort to learn what was being done; that he had seen a newspaper article stating that his case had been appealed; that about six months after he was sentenced he wrote to the Supreme Court Clerk requesting information about the appeal; that he received no reply to this letter, but on November 27, 1957, which was approximately one year later, he received a letter from the Supreme Court Clerk enclosing the bill of exceptions and stating in substance that the Supreme Court had taken no action because an appeal had not been perfected.[5]

The petitioner contends that he was denied his constitutional rights to due

---

4. The sole purpose in procuring, settling and filing the bill of exceptions was to preserve the record and the right to appeal by writ of error if it were later determined that an appeal would be justified. (Exhibit D to the supplemental answer.)

5. The respondent offered no evidence to contradict the petitioner's testimony that he wrote the Supreme Court Clerk the letter of inquiry about six months after he was sentenced and that he received no reply until November 27, 1957. Fur-

process and equal protection by the failure of the Supreme Court to appoint counsel for the petitioner or to take some other affirmative action to protect his interests. It is argued that "whether this was an appeal in the nature of a writ of error or simply a writ of error, it became incumbent upon the State, acting through its Supreme Court, to take some action to protect the rights of this petitioner after the bill of exceptions was marked filed by the Clerk of that Court."

 Recent decisions of the Supreme Court make it altogether clear that a state establishing a system of appellate remedies must extend its benefits to all persons alike, to the end that the indigent and uninformed defendant may be on an equal plane with the defendant with means who is able to pay his own way. Under the doctrine of these cases the state, for example, has an obligation to provide an indigent defendant with an adequate trial record, and also with the services of an attorney both in the trial court and on appeal. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899. The facts of this case lead inescapably to the conclusion that the state failed in its essential duty as far as the petitioner is concerned and thereby discriminatorily deprived him of the right of appellate review under state law.

 The right of appeal granted by Tennessee law is not automatic or self-executing. It is conditioned upon the taking of certain procedural steps and, in addition, a defendant may choose not to appeal or he may waive the right. In this case, however, while the defendant did waive the right to take an appeal in the nature of a writ of error, required to be perfected within thirty days, and elected to begin immediately serving his sentence in the penitentiary, there is no basis for holding that he waived the right to seek an appellate review by writ of error—a right open to him for two years. In the first place the defendant was wholly ignorant of his rights in this respect and the inference is clear that no one ever advised him that this avenue of appeal was open to him. Moreover, the bill of exceptions was prepared and filed within the prescribed period by the attorney acting in behalf of his relatives for the express purpose of preserving this method of appeal if it should later be determined to seek it, a fact which was apparently overlooked by the state trial judge. Withdrawal of an immediate appeal in the nature of a writ of error, or failure to pursue such an appeal, is clearly not a waiver or abandonment of a wholly different method of review which can be sought at any time within two years. Burcham v. Carbon & Carbide Chem., 188 Tenn. 592, 221 S.W.2d 888. Any different holding would seriously impair, if not wholly defeat, the usefulness of the writ of error as an appellate remedy.

 The question then arises: Was the defendant an indigent within the meaning of the applicable authorities? In the opinion of the Court this question must be answered in the affirmative. It is true that through the generosity of relatives he had the benefit of employed counsel in the trial court, and that in the same way the bill of exceptions was prepared and filed. But after the attorney who procured and filed the bill of exceptions quoted a fee for handling a possible appeal, the relatives apparently lost interest and the petitioner was left to his own devices—behind prison bars, ignorant of his rights, and without financial resources.

thermore, the petitioner's testimony is corroborated by the Supreme Court Clerk's statement (Defendant's Exhibit No. 2) that after the bill of exceptions was marked filed on May 10, 1956,

"[n]othing was done in our Court * * * until we shipped it by express on Nov. 26, 1957 to Wm. Luther Miller at the penitentiary."

It was in this posture that he read the newspaper article indicating that his case was on appeal in the state Supreme Court. Whether he had thought about an appeal prior to this time, or whether the article itself suggested to the petitioner the idea of an appeal, seems to the Court to be wholly beside the point. For there can be no doubt that before writing the clerk the petitioner did want to have his case reviewed by the Supreme Court —a right which was then open to him. Such desire for an appeal is made clear by petitioner's letter to the clerk requesting information concerning his appeal. What he needed at this time was correct information and, if necessary, legal assistance. Had this been supplied to him, it would have been a simple matter to have had the technical record and other necessary papers forwarded by the trial court to the Supreme Court, thus perfecting an absolute right of review by writ of error. But instead the state, although put on notice of petitioner's desire for an appellate review, not only failed to provide this indigent prisoner with the assistance of counsel but even failed properly to respond to his request for information as to his appeal. Indeed, his request was totally ignored until about a year later, (November 27, 1957) when he received the bill of exceptions from the clerk with an accompanying letter stating that an appeal had not been perfected. A number of observations at this point appear to be in order: First, the letter from the clerk was not responsive to the petitioner's request, for he had sought information concerning his appeal, not the withdrawal of the bill of exceptions. Second, the letter contained no information as to what was required to perfect the appeal, i. e., the supplying of additional papers by the trial court. Third, the clerk's letter was not written until long after expiration of the one-year period during which petitioner had an absolute right to have his case reviewed by issuance of a writ of error, and only two months and twenty-one days before expiration of the two-year period within which he could have sought a discretionary review by writ of error. Finally, the bill of exceptions when received by petitioner and read by him for the first time could only have been confusing and misleading to him, for the certificate signed by the trial judge contained on its face his ruling that an appeal had been denied.

It is only reasonable to assume that the petitioner, having no knowledge of the law, was led to believe that this ruling effectively closed the door to an appellate review and that he thus took no further steps within the short period remaining within which the record could still have been filed with the Supreme Court as the basis for seeking a discretionary review by writ of error. It seems obvious that the defendant, confronted with such a ruling from the trial judge, with the clerk's return to him of the bill of exceptions, and with the clerk's statement that no appeal had been perfected, was not only not properly advised or informed but actually misled.

If the petitioner had been a man of means it seems clear that under the same facts his rights would have been protected. It would have been a simple matter to obtain the services of an attorney who could have obtained the true facts as to the status of the appeal and who could have easily perfected it by taking the steps necessary to have a full record filed with the Supreme Court. The conclusion thus follows on the basis of the whole record that petitioner was denied clearly established rights of appeal under state law by the discriminatory failure of the state through its duly constituted agencies and officers to furnish him with pertinent information and advice. Fundamentally, the deprivation of appellate rights was caused not by any default of the petitioner, who did the best he could in the light of his ignorance and lack of funds, but by the failure of the state to perform a constitutional duty.

█ It is no answer to say that defendant did not request the appointment of counsel, or directly communicate the fact of his indigency to the state. The point is that he did request information

which, if properly supplied, would have indicated the need for legal representation. The state, having failed not only to supply pertinent information, but having also in effect misled the petitioner into the belief that no appellate review was possible, is hardly in position to rely upon petitioner's failure to make a formal request for an attorney, or his failure to advise the state that he was without funds to employ an attorney. If, as petitioner was led to believe, an appellate review had been foreclosed, there would have been nothing to be accomplished by the appointment of a lawyer.

On the facts of this case the Court is of the opinion that the only way that the constitutional error committed against the petitioner can be cured or remedied is by declaring his conviction and sentence void and directing his immediate discharge from custody.

Accordingly an order has this day been passed to the Clerk adjudging that the petition for the writ of habeas corpus be granted and that the petitioner, William Luther Miller, be released from the custody of the respondent, Lynn Bomar, Warden, Tennessee State Penitentiary, forthwith.

### Supplemental Order

This cause came on to be further heard upon the motion of the respondent that the judgment entered herein on November 12, 1963, directing that the petitioner be released from custody of the respondent forthwith, be amended so as to provide that the petitioner be remanded to the custody of the Sheriff of Knox County, Tennessee, for retrial in the event the state desires to retry him.

▮ Upon consideration of the motion and the oral argument of counsel for the petitioner and the respondent, the Court is of the opinion that the proper course to be taken at this time is to grant the petitioner maximum relief he could have obtained if his appeal had been properly perfected and successfully prosecuted. This can be accomplished by directing that the petitioner be accorded a new trial if the state desires to retry him for the offenses charged in the indictment and otherwise, that he be released from custody. United States ex rel. Weston v. Sigler, 308 F.2d 946 (C.A. 5, 1962), cert. denied 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143. See also Coffman v. Bomar, 220 F.Supp. 343 (M. D.Tenn.1963).

Accordingly, it is ordered as follows:

1. The order entered herein on November 12, 1963 insofar as it directs that the petitioner be discharged from the custody of the respondent forthwith is vacated.

2. The petitioner will be released from the custody of the respondent and delivered into the custody of the Sheriff of Knox County, Tennessee, if the state officials intend to retry the petitioner for the offenses out of which the instant proceeding arose.

3. If the state officials do not intend to retry the petitioner for the offenses out of which the instant proceeding arose, the petitioner will be released from the custody of the respondent forthwith.