**STATE of Missouri, Respondent,**

v.

**Dan Westley GRAY, Appellant.**

No. 49313.

Supreme Court of Missouri,

Division No. 1.

Oct. 8, 1962.

Welker & Young, Portageville, for appellant.

Thomas F. Eagleton, Atty. Gen., Richard R. Nacy, Jr., Special Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

A jury convicted Dan Westley Gray of murder in the second degree and fixed his punishment at 60 years, on an information charging him with the first degree murder of Cleatus Leo Phillips on September 12, 1960 in New Madrid County. Gray's attorneys filed a motion for new trial, which was overruled. Gray appealed but filed no brief, so we review all the specifications of error properly preserved in his motion for new trial, Sup.Ct. Rule 27.20, V.A.M.R., and the portions of the record required by Sup.Ct. Rule 28.02, V.A.M.R.

Although the sufficiency of the evidence to make a submissible case is not challenged, we briefly review the State's evidence, which tended to show these facts: Sheriff Ramsey had a warrant for the arrest of defendant. Informed that defendant was at the home of his brother Bobby Gray, the sheriff and Cleatus Phillips, a deputy sheriff, went to the brother's home near Marston, traveling in a pickup truck. The sheriff went to the front door, Phillips to the back of the house. Phillips called out that he saw defendant inside the house. The sheriff called on defendant to come out. Defendant said "Wait until I get a shirt on." Time passed and defendant did not come out. The sheriff opened the front door, walked into the front room of the house, and heard a sound like a pump shotgun being pumped, in a rear room. Phillips kicked the back door open, and as Phillips was entering the house defendant shot Phillips in the head with a shotgun at close range, killing him instantly. The sheriff ran out of the house, ordered defendant to come out and throw down his gun, and fired into the air twice to scare him out. Defendant left by the rear door, came around the house, encountered the sheriff at the corner of the front of the house, and shot the sheriff, the main load striking the sheriff in the left shoulder and chin, knocking out a tooth and a B–B blinding him in one eye. The sheriff ran around the house, saw Phillips' dead body lying on the ground, ran in the direction of the truck, encountered defendant, and the two men exchanged shots simultaneously, some of the shots striking the sheriff's arm. The sheriff ran into a cornfield. Defendant, with a shotgun in his hand, followed the sheriff. The sheriff took two more shots, emptying his pistol, ran toward a road, collapsed. Defendant approached the sheriff, who was weak from loss of blood and down on his hands and knees. The sheriff asked him not to shoot him. At defendant's instruction the sheriff threw his gun out on the road. Defendant then fetched the truck, loaded the sheriff and the dead man in the back of the truck, and drove around through the woods and over the back roads, first starting to town to take the sheriff to a doctor, later changing his mind. Defendant took $61 from the sheriff, rolled the deceased over enough to remove his billfold from his hip pocket, and extracted the folding money, saying he wanted "money to get an airplane ticket to get away on." Defendant asked the sheriff for two days' time before informing on him, suggested that the sheriff say "it was a nigger"; that if the sheriff "liked his children" he had "better say it's a nigger"; that if the sheriff would give defendant a chance to get away he would send him $10,000 within two months' time "to fix [his] face up as good as new." Defendant finally turned the truck over to the sheriff, who drove around until he found someone to take him to a doctor. Three days later defendant was taken into custody in the vicinity by the highway patrol. The defense was self-defense.

We reproduce the first seven assignments of error in Gray's motion for new trial:

"(1) The verdict in said cause is against the evidence, the weight of the evidence, and against the law under the evidence.

"(2) The verdict was for the wrong party.

"(3) The Court erred in admitting incompetent, irrelevant and immaterial evidence offered on behalf of the State, particularly with reference to the testimony of Bob Gray, father of the Defendant.

"(4) The Court erred in rejecting competent, relevant, and material evidence offered for and on behalf of the Defendant.

"(5) The Court erred in giving and reading to the jury instructions given at the request of the State of Missouri.

"(6) The Court erred in giving and reading to the jury instructions given and read of his own motion.

"(7) The Court erred in refusing to give and read to the jury instructions offered and requested by the Defendant."

None of the foregoing assignments is sufficiently specific to present anything for appellate review. Sup.Ct. Rule 27.20, V.A. M.R.; State v. Howard, Mo.Sup., 360 S.W. 2d 718, handed down concurrently herewith, and cases cited; State v. Romprey, Mo. Sup., 339 S.W.2d 746; State v. Russell, Mo. Sup., 324 S.W.2d 727; State v. Stumph, Mo. Sup., 349 S.W.2d 954.

Assignment No. 8: "The verdict of the jury is excessive and the result of bias and prejudice on the part of the jury in favor of the State and against the Defendant." Section 559.030, RSMo 1959, V.A.M.S., provides that the punishment for conviction of murder in the second degree is imprisonment in the penitentiary not less than ten years. Any punishment within the range of 10 years to life is sufficient under this statute. State v. Robinson, Mo.Sup., 177 S.W.2d 499. The motion suggests no reason why the verdict is excessive. It was within the province of the jury to fix the length of the term, State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, subject to the trial court's discretionary power to reduce the punishment so assessed. State v. Strong, Mo.Sup., 339 S.W.2d 759. The trial court has a "far better opportunity to pass on all the facts, having seen and heard the parties and witnesses and knowing the trial atmosphere." State v. Rizor, 353 Mo. 368, 182 S.W.2d 525, 529. The question of excessiveness was presented to the trial court in the motion for new trial. The trial court overruled the motion, thereby determining the issue of excessiveness against defendant. When the punishment assessed is within the range prescribed by statute, it cannot be adjudged excessive by an appellate court. State v. Wolfe, Mo.Sup., en banc, 343 S.W. 2d 10, and cases cited 1. c. 16. Defendant's undeveloped allegation that the verdict is the result of bias and prejudice is too general to merit consideration. State v. Minor, Mo.Sup., 282 S.W.2d 545.

Assignment No. 9: "The Court erred in failing and refusing to sustain the Defendant's Motion in behalf of the Defendant to deny Hal E. Hunter the right to further proceed as Assistant Prosecuting Attorney to prosecute the case on behalf of the State for the reason that at the time of the filing of the information herein the said Hal E. Hunter was acting as Assistant Prosecuting Attorney and was also Clerk of the Magistrate Court in which the preliminary hearing was held, and that as such he was debarred by the statutes of the State of Missouri to act as Prosecuting Attorney or Assistant Prosecuting Attorney." Hal E. Hunter, Jr., signed and filed the instant information as assistant prosecuting attorney. On that date Hunter also held the office of clerk of the magistrate court in the same county. Section 476.290, RSMo 1959, V.A.M.S., provides that no clerk while he continues to act as such shall plead, practice or act as counselor or attorney in any court within the county for which he is such clerk, in his own name or in the name

of any other person, under any pretense whatever, and § 476.300 provides that any suit commenced or paper filed in violation of the preceding section shall, on motion, be dismissed or stricken from the record. The week before the instant trial Hunter resigned as clerk of the magistrate court. On the day of trial he appeared on behalf of the state in his capacity of assistant prosecuting attorney. After the jury was empaneled and two witnesses had testified counsel for defendant filed a written motion to deny Hunter the right to further appear in the cause on behalf of the state. The court overruled the motion to bar Hunter from further proceeding on behalf of the state in the prosecution of the case. The action of the court was proper and must be sustained. At the time the motion was filed Hunter was not continuing to act as clerk of the magistrate court. At that time Hunter was not prohibited from further proceeding in the case as assistant prosecuting attorney. Following the overruling of the motion to bar Hunter from further prosecuting the case, defendant's counsel filed an oral motion *to strike and quash the information,* but the point that the *information* was insufficient for this same reason was not preserved in the motion for new trial, and therefore is not before us on this review.

■ Assignments Nos. 10 and 15: "(10) Defendant, in addition to other objections to Instruction No. 1 given for and on behalf of the State and at the request of the State, states that the Court erred for the reason that said instruction limits definitions 'deliberately', 'wilfully', 'premeditatedly' and 'with malice aforethought', to Instruction No. 1. Said definitions are limited and made a part of Instruction No. 1 only." "(15) The main Instruction, to-wit: No. 1, given by the Court at the request of the State, confines definitions of the words, 'wilfully', 'deliberately', 'premeditatedly', 'malice', and 'malice aforethought', to the Court's Instructions regarding murder in the first or second degree." If we understand correctly, the complaint is that Instruction No.

1 confines and limits the definitions of the quoted words to that instruction, which relates to murder in the first and second degree. Although the motion does not say so in terms, we take it that the inferential complaint is that the terms "deliberately", "wilfully," "premeditatedly," "malice," and "malice aforethought," wherever else they occur in the instructions, were given to the jury without definition. None of these terms is to be found in any other instruction, however, except the term "malice," which occurs in Instruction F on the subject of manslaughter. Although the term "malice" is not defined in Instruction F it cannot be said that the jury was uninstructed as to its meaning as used in Instruction F, because the definition of "malice" in Instruction No. 1 is applicable to all of the instructions in the case, for it is preceded by these words: " 'Malice' in its legal sense *and as used in these instructions* * * *." (Italics ours.) The jury is obliged to read all of the instructions together, as a whole. State v. Politte, Mo.Sup., 249 S.W.2d 366, 370; State v. Martin, 364 Mo. 258, 260 S.W. 2d 536. So read, the term "malice" occurring in Instruction F was properly defined.

■ Assignment No. 11: "The verdict of the jury was arrived at as a quotient verdict, that is, the jurors each stated a particular term of service and the total of the terms so designated were divided by twelve, and that is the fashion in which the verdict of sixty years was arrived at." The unsupported allegation that the verdict is a quotient verdict, made without substantiation by affidavit or other evidence, fails under the rule that unverified allegations of a motion for new trial as to matters not shown by the record do not prove themselves. State v. Smart, Mo.Sup., 328 S.W.2d 569, 576, and cases cited.

■ Assignment No. 12: "The Defendant has discovered additional and newly discovered evidence of witnesses who were in the jail at the time of the alleged beating of Defendant Gray and will on the next trial of this cause testify that they saw and heard

the Defendant beaten by the deceased Cletus Phillips." In order to secure a new trial on the ground of newly discovered evidence all six of the factors referred to in State v. Brotherton, Mo.Sup., 266 S.W.2d 712, must be shown. Appellant complied with none of these requirements.

■ Assignment No. 13: "The Court erred in failing and refusing to give to the jury not only all of the instructions offered and requested by the Defendant, but particularly Instruction G, which defined the essential elements of manslaughter." Although this point fails to comply with Sup. Ct.Rule 27.20, we will consider whether the subject of manslaughter was properly instructed upon. Instruction F directed the jury that they could not find defendant guilty of murder in the first or second degree if the killing was done in a violent passion suddenly aroused, but in that event if the jury further found that the killing was not done in self-defense they should find him guilty of manslaughter. Instruction F is a proper instruction on manslaughter under the statutory provision that "Every killing of a human being by the act, procurement * * * of another, not herein declared to be murder or excusable or justifiable manslaughter, shall be deemed manslaughter." A sufficient instruction on the subject of manslaughter having been given, there was no error in refusing defendant's Instruction No. G, which directed a verdict of manslaughter upon a finding of intentional shooting without premeditation or malice, unless there should be an acquittal on the ground of self-defense.

■ Assignment No. 14: "The Court failed to supplement Instruction F given by the Court, for the reason that among other things, the Instruction refers to 'that such shooting and killing were not done in self defense as hereinafter explained you will find him guilty of manslaughter.' There was no Instruction thereinafter given, other than the refused Instruction G." This point is without merit. Instruction F needed no further "supplementing" than

that provided by given Instruction No. B, which fully and completely covered the defense of self-defense. The fact that the word "hereinafter" in Instruction F should have read "hereinbefore" is a trifling discrepancy cured by the Statute of Jeofails, § 545.030, subd. 1(18).

■ Assignment No. 16: "That the Instructions given by the Court are confusing, ununderstandable, and contradictory, to the jury." This point is so general that it preserves nothing for appellate review. Out of an abundance of caution, however, we have reviewed the instructions critically, and find them to be conventional and unexceptional in form and substance, understandable, consistent, and fully adequate to cover all of the elements of the crime.

■ A minute examination of this record reveals no reversible error. Appellant, represented by two capable lawyers, was accorded a fair and impartial trial. The verdict, finding defendant guilty of murder in the second degree and assessing his punishment "at 60 years" was sufficient to support the judgment and sentence confining him in the custody of the department of corrections in an institution designated by the department in accordance with law for a period of sixty years. The omission of the words "in the penitentiary" does not affect the meaning or validity of the verdict. State v. Allen, Mo.Sup., 343 S.W.2d 63; State v. Kenton, Mo.Sup., 298 S.W.2d 433; State v. Herman, Mo.Sup., 280 S.W.2d 44. The punishment is authorized by law, Section 559.030, RSMo 1959, V.A.M.S.; allocution was granted; the judgment is proper in form and substance, and the sentence was duly imposed. The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.