882

James R. TUCKER, Petitioner,

v.

James E. MEADOWS, Acting Warden,
State Penitentiary, Nashville,
Tennessee, Defendant.

Civ. No. 3819.

United States District Court
Middle District of Tennessee,
Nashville Division.

Nov. 2, 1964.

Robert H. Dedman, Nashville, Tenn., for plaintiff.

Henry C. Foutch, Asst. Atty. Gen., Nashville, Tenn., for defendant.

WILLIAM E. MILLER, Chief Judge.

The petitioner, James R. Tucker, was convicted in the Circuit Court of Sumner County, Tennessee, on the 10th day of September 1962, on a two-count indictment for the crimes of robbery by the use of a deadly weapon and grand larceny. Since he was an indigent and unable to employ counsel, the state trial court appointed Thomas Boyers IV, of the Gallatin bar, to represent him. Upon motion of such court-appointed counsel under T.C.A. § 40–2010, the trial court in the exercise of its discretion in a capital case, appointed a court reporter to report the petitioner's trial. Petitioner received a sentence of ten years

on the robbery count and a five-year sentence on the charge of grand larceny. The sentences were made to run concurrently.

There is a conflict in the evidence as to whether the petitioner specifically requested his court-appointed counsel to appeal his conviction. However, it is undisputed that the petitioner requested his attorney to file a motion for a new trial, or at least gave notice to such attorney that he wanted such a motion filed. This information was conveyed to the trial judge by the attorney in the presence of the petitioner. At the same time that the trial judge was notified that the petitioner intended to file a motion for a new trial, the court-appointed attorney moved the Court for permission to withdraw from the case. This motion was made orally in open court in the presence of petitioner and the motion was immediately granted, according to the testimony of the attorney, although apparently no formal order was entered in the record to this effect. The minute entries of petitioner's convictions both reflect that the Court was notified of the petitioner's intent to file a motion for a new trial.

On the day following his conviction an order was approved by the trial judge removing the petitioner to the State Penitentiary at Nashville which order recited that the petitioner was "now being held in the Sumner County jail pending the filing of a motion for a new trial." After his commitment to the penitentiary, the petitioner wrote his court-appointed attorney a number of times requesting him to take steps to appeal the convictions, but these letters were unanswered. Later the petitioner wrote such attorney in regard to obtaining a transcript of the evidence and testimony in the case. The attorney replied that if the petitioner could pay the court reporter's regular fee, he was sure that a copy of the transcript could be prepared for him. No steps were taken either by the court-appointed attorney or the trial judge to advise the petitioner or to supply him with information as to the steps which would be required to perfect an appeal. The petitioner, having exhausted his state court remedies, has petitioned this Court for a writ of habeas corpus, challenging the validity of his convictions upon the ground that he was deprived, in violation of the equal protection and due process clauses of the Fourteenth Amendment, of his statutory right of appeal and the effective representation of counsel.

The Court is of the opinion that the decision in this case is controlled by the rationale of Coffman v. Bomar, 220 F. Supp. 343 (M.D.Tenn.1963), and of Miller v. Bomar, 230 F.Supp. 204 (M.D. Tenn.1963), although admittedly there are factual differences between those cases and the present one.

In Coffman, the Court found that the petitioner, after his motion for a new trial was overruled by the state trial court, requested his court-appointed counsel to appeal, but that such counsel, after conferring with each other, decided not to perfect an appeal, without communicating this information to the petitioner. The result was that the 30-day period for filing a bill of exceptions was allowed to expire without any of the necessary procedural steps being taken to confer effective appellate jurisdiction upon the State Supreme Court. Absent the filing of such a bill of exceptions the only possible method for review by the Supreme Court would have been upon the technical record alone. It was pointed out that if the bill of exceptions had been timely filed, the petitioner could have obtained an appellate review upon the entire record at any time within two years.

In holding that the petitioner's constitutional rights had been infringed, the Court stated:

"As a part of its system of appellate review to protect indigent defendants Tennessee has placed definite responsibilities in capital cases upon the trial judge, the official court reporter, the clerk, and upon court-appointed counsel to take the necessary procedural steps to effectuate an appeal. The clear meaning of the controlling statutes is that the duty

of court-appointed counsel in such cases does not end with the filing of a new trial motion but continues at least to the point that they are required to file a timely bill of exceptions to the end that the right of an appellate review may not be lost. The same statute further provides that in the event of an appeal court-appointed counsel shall be entitled to receive from the state mileage at a prescribed rate from the town of his residence to the point where the Supreme Court shall sit. T.C.A. § 40-2013. Thus, court-appointed counsel in such cases in a very real sense constitute a part of the system whereby the state in capital cases seeks to protect the indigent defendant with respect to an appellate review of his conviction. Having in these cases specific statutory duties to perform in connection with an appeal not imposed upon attorneys generally, any default on their part in this respect must be attributed to the state in testing the application of the Fourteenth Amendment."

In Miller v. Bomar, supra, it was held by this Court that petitioner's constitutional rights had been denied by the failure of the state to supply him with information concerning the attempted appeal of his conviction, it appearing that the supplying of such information would have enabled the petitioner, an indigent, to perfect an appeal by writ of error. This was true although it was conceded that the petitioner had not specifically requested the appointment of an attorney.

■■ It appears to the Court that the principles of these decisions have inescapable application to the facts of the present case. The Tennessee statute, T.C.A. § 40-2011, provides that it is the duty of the court reporter appointed by the court to prepare an original and one copy of the proceedings of the trial "and to turn the same over to such counsel appointed for such defendant to be used as his bill of exceptions." T.C.A. § 40-2012 provides that the attorney appointed by the court to represent the defendant

"shall file such bill of exceptions in duplicate and the clerk in preparing his transcript for the appellate court upon appeal shall use the original bill of exceptions as part of such transcript, retaining a copy in his files." These provisions of the statute were obviously designed to protect an indigent defendant and to make certain that the necessary steps would be taken to perfect his appeal in capital cases. Their additional purpose was to afford to indigent defendants in such cases adequate representation by court-appointed counsel not only in the trial of the case itself but also in taking the procedural steps required to effectuate an appellate review. The same statute in another section provides that in the event of an appeal court-appointed counsel shall be entitled to receive from the state mileage at a prescribed rate from the town of their residence to the point where the Supreme Court shall sit. T.C.A. § 40-2013. The statutory scheme to protect the defendant at all stages of the proceeding is thus made explicit and unmistakable. The statute is not conditioned upon the request of the defendant, nor upon his indication of an intention to appeal. It is mandatory in character and any failure to observe its requirements necessarily constitutes a violation of a defendant's rights in the class of cases to which it applies.

It was further stated by this Court in Coffman v. Bomar, supra:

"Decisions of the Supreme Court have clearly settled the proposition that a state, having an appellate system in criminal cases, is constitutionally required to provide means of affording adequate and effective review to indigent defendants, to the end that they may be placed upon a basis of equality in this respect with nonindigents. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. More recent decisions are to the same effect. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, holding that denial to an indigent defendant of counsel on appeal from his criminal conviction was a

discrimination between the rich and the poor which violates the Fourteenth Amendment; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed. 2d 892, holding that an indigent defendant was denied equal protection of the law under a state statute permitting the Public Defender to refuse a transcript of the record for an appeal if in his opinion the appeal would not be effective; and Draper v. Washington, 372 U.S. 487, 83 S. Ct. 774, 9 L.Ed.2d 899, holding that there was an unconstitutional discrimination against an indigent defendant by a state rule permitting the trial judge to deny a free transcript. The undeniable teaching of these cases is that indigent defendants in criminal cases must be accorded substantially the same opportunities to have an effective appeal as nonindigents."

The same principles were expressed in the later case of Miller v. Bomar, as follows:

"Recent decisions of the Supreme Court make it altogether clear that a state establishing a system of appellate remedies must extend its benefits to all persons alike, to the end that the indigent and uninformed defendant may be on an equal plane with the defendant with means who is able to pay his own way. Under the doctrine of these cases the state, for example, has an obligation to provide an indigent defendant with an adequate trial record, and also with the services of an attorney both in the trial court and on appeal. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; Douglas v. California, 372 U. S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Lane v. Brown, 372 U.S. 477, 83 S. Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899. The facts of this case lead inescapably to the conclusion that the state failed in its essential duty as far as the petitioner is concerned and thereby discriminatorily deprived him of the right of appellate review under state law."

While Tennessee has provided a statutory procedure for protecting an indigent defendant in a capital case in connection with his right to appeal, this statutory scheme was frustrated and the petitioner's substantial rights denied him by the action—and in some respects the non-action—of state officers and agencies, including the court reporter, court-appointed counsel, and the trial judge. Thus, the court reporter, contrary to the mandatory duty imposed upon her, failed to prepare and file a copy of the transcript of the evidence which would have constituted the basis for a bill of exceptions, such bill of exceptions being necessarily required to obtain a full appellate review on the merits. In addition, the court-appointed attorney, who had represented the petitioner at the trial, withdrew from the case, with the permission of the court, despite the fact that both the attorney and the court were notified that the petitioner intended to file a motion for a new trial. Such withdrawal was in direct conflict with the clear implication arising from T.C.A. § 40–2011, that a court-appointed attorney in such cases is required to obtain a copy of the proceeding from the court reporter and to prepare and file for the defendant a bill of exceptions. If these statutory duties had been observed, the petitioner's right to have an appellate review would have been safeguarded. The court-appointed attorney had no right to withdraw from the case at this critical stage of the proceeding and the court was without authority to permit it. The default was only compounded after the withdrawal of the court-appointed attorney by the failure of the court to take any steps to appoint another attorney to represent the petitioner, although notice had been given in open court that it was the petitioner's desire to file a motion for a new trial. It had been definitely established in the proceeding that the petitioner was an indigent defendant and the inference should have been clear

that he was ignorant of his rights and that without counsel a new trial motion could not be prepared and filed.

From these established facts the Court can only find and conclude that the petitioner was not only denied his statutory rights to have an appellate review, but that he was also denied effective representation of counsel at a critical stage in the proceeding in violation of the equal protection and due process clauses of the Fourteenth Amendment.

■ Respondent strenuously argues that petitioner was not deprived of his constitutional rights because he made no request for an appeal and did not request the court to appoint another attorney. This argument, however, is fallacious in this case for a number of reasons. First, as pointed out, the statute is mandatory and the steps required to be taken to lay the foundation for an appeal are not conditioned upon a defendant's request. Secondly, while it may be that the petitioner did not in terms request an appeal, he did give notice both to his court-appointed counsel and to the trial judge that he intended to file a motion for a new trial—a necessary preliminary step for an appellate review upon a full record. If such motion had been filed and overruled, and a bill of exceptions had then been timely filed, the petitioner would have had a period of as much as two years within which to determine for himself whether or not to seek a review of his convictions by the Supreme Court by writ of error. Coffman v. Bomar, supra; Miller v. Bomar, supra. Under such circumstances, it is idle to argue that the petitioner's rights were not infringed simply because he did not state in so many words, immediately following his convictions, that he desired at that time to have his case reviewed by the Supreme Court. Thirdly, while the petitioner did not request the appointment of another lawyer by the court, it was obvious that after the attorney who had represented him at the trial was relieved of his duties and permitted to withdraw, the petitioner was left without legal representation and hence without the means to carry out his intent to file a motion for a new trial.

■ The case of Horton v. Bomar, 335 F.2d 583 (6th Cir. 1964), relied upon by respondent, is not in point. It is true that the Court of Appeals pointed out in that case that the trial judge is not obliged to inquire into the continuing status of the relationship between attorney and client. However, in that case the defendant had been represented at his trial in the state court by his own counsel who refused to take an appeal unless he received an additional fee. It was held that the defendant's due process and equal protection rights were not infringed by failure of the trial court to appoint an attorney to take an appeal for the reason that the defendant made no claim that he ever advised the trial judge that he was unable to employ a lawyer, or that he made a request for the appointment of a lawyer. In contrast, in the present case the trial judge knew that the petitioner was an indigent and he was directly advised that he intended to file a motion for a new trial, the first step to obtain an adequate appellate review.

It is therefore directed that an order be submitted to the Court for the issuance of a writ of habeas corpus adjudging that the petitioner be released from the further custody of the Warden of the Tennessee State Penitentiary, Nashville, Tennessee, and delivered to the custody of the Sheriff and District Attorney General of Sumner County, Tennessee, if said state officials intend to retry petitioner for the offense out of which the instant proceeding arose. In the event the said state officials do not intend to retry the petitioner for said offense, the order will direct that he be released from further custody forthwith.