**Dan Westley GRAY, Petitioner,**

v.

**Harold R. SWENSON, Warden,
Respondent.**

**No. 1392.**

United States District Court
W. D. Missouri,
Central Division.

July 22, 1969.

See also D.C., 296 F.Supp. 1040.

John E. Besser, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, Mo., for petitioner.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING HABEAS CORPUS

JOHN W. OLIVER, District Judge.

### I.

The state prisoner involved in this habeas corpus case is before this Court for a second time. In Gray v. Swenson (W. D.Mo.1967) 271 F.Supp. 912, we determined that petitioner had been deprived of his federally protected right to appellate counsel. Consistent with the established practice of this Court, we stayed the issuance of the writ in order to permit the State of Missouri to take appropriate steps to set aside and vacate the Supreme Court of Missouri's affirmance of petitioner's original conviction on direct appeal as reported in State v. Gray, 360 S.W.2d 642, to appoint appellate counsel, and to afford petitioner a new direct appeal in accordance with the command of Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

Appropriate procedural steps were taken to comply with the conditions of this Court's stay order. Petitioner's second direct appeal in the Supreme Court of Missouri was consolidated with an appeal which was also then pending in that court from a denial of an earlier Missouri Supreme Court Rule 27.26, V. A.M.R. motion. After hearing, petitioner's original conviction was again affirmed by the Supreme Court of Missouri in State v. Gray, Mo.Sup.Ct.Div. 3, 1968, 432 S.W.2d 593.

In the second habeas proceeding in this Court, petitioner alleged and proved that the representation afforded petitioner by counsel appointed by the state trial court to represent him on his second direct appeal in the Supreme Court of Missouri was so inadequate and ineffective that his federal constitutional right to the effective assistance of counsel was again violated. The factual situation is undisputed. Counsel for respondent states with commendable candor and responsibility that "respondent would be lacking in credibility and candor before this Court and amiss in the fulfillment of his professional obligation to attempt to contend that petitioner was the recipient of effective assistance of counsel under the facts and circumstances presented." [1]

Both parties agree that under the undisputed factual situation presented that petitioner was, as a matter of law, deprived of rights guaranteed him by the Constitution of the United States in connection with his second direct appeal in the Supreme Court of Missouri. We state that conclusion of law in language suggested by respondent's counsel, namely, "that the representation afforded petitioner by his court-appointed counsel was such that it constituted inadequate and ineffective representation by counsel in contravention of the guarantees of the Sixth and Fourteenth Amendments to the United States Constitution."

---

1. In Appendix A attached to this opinion we set forth the twenty-nine findings of fact suggested by petitioner's appointed counsel in this Court and the three additional findings suggested by counsel for the respondent. Counsel for the respective parties concede that all 32 findings are supported by the evidence adduced at the hearing in this Court; neither side objected to findings requested by the other. All the findings of fact set forth in Appendix A are to be considered as findings of fact made pursuant to Rule 52 of the Rules of Civil Procedure. A few additional findings are made in our opinion.

## II.

The parties are not, however, agreed in regard to what relief should now be granted. Petitioner contends that this Court's writ of habeas corpus should now be issued directing petitioner's permanent release from custody. Respondent's first contention is that this Court should grant the writ but that a stay order substantially identical to that entered in August, 1967 be again entered to afford the State still another opportunity to vacate and set aside its second affirmance of petitioner's direct appeal, and to appoint new appellate counsel to represent petitioner on what would be a third direct appeal. As a second alternative, respondent suggests that, at most, "petitioner be accorded a new trial, if the State desires to retry him for the offense charged, and, otherwise that he be released from custody."

This Court is under duty to dispose of this case "as law and justice require," Section 2243, Title 28, United States Code. We believe that the flexibility of remedy contemplated by that section affords, under the particular circumstances of this case, alternatives of relief which do not require this Court to make the hard choice between an unconditional grant of the writ and conditioning its stay order in a manner which would require a third direct appeal in the Supreme Court of Missouri.

We have concluded, for reasons we shall state, that an appropriate order be entered to allow the State of Missouri a reasonable time to afford petitioner an appropriate Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing in the state trial court, or a new trial, failing either of which, petitioner would then be entitled to his release.

## III.

The unique and most unfortunate factual circumstances involved in this case tend to obscure the principles applicable to this Court's exercise of its habeas corpus jurisdiction. Those circumstances, when viewed with appropriate judicial objectivity, merely require this Court, in order to dispose of the matter as law and justice require, to make an ultimate finding that, within the meaning of Section 2254(b), Title 28, United States Code, circumstances in fact exist which rendered the "available State corrective * * * ineffective to protect the rights of the prisoner."

Under Section 2254(b), a federal habeas court may not properly refuse to exercise its habeas jurisdiction if either (1) there is "an absence of available State corrective process," or (2) the factual situation presented in a particular case establishes "the existence of circumstances rendering such [available State corrective] process ineffective to protect the rights of the prisoner."

Cases both before and after the Supreme Court's 1963 habeas trilogy, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), make clear that the second exception to the exhaustion rule codified in Section 2254 is as important as the first. See Woods v. Nierstheimer, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177 (1946); Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949) and Jennings v. Illinois, 342 U.S. 104, 72 S. Ct. 123, 96 L.Ed. 119 (1951), for examples which make inquiry into whether any "available State corrective process" in fact existed in Illinois at that particular time, within the meaning of the first exception to the exhaustion rule.

And see United States ex rel. Mercer v. Commonwealth of Pennsylvania, (3rd Cir.1962) 310 F.2d 25; Hunt v. Warden, Maryland Penitentiary, (4th Cir.1964) 335 F.2d 936, 940; Harvey v. Mississippi, (5th Cir.1965) 340 F.2d 263, 268; and Smith v. Kansas, (10th Cir.1966) 356 F.2d 654, for cases which make inquiry into the second exception of whether the available state remedy was

rendered ineffective under the particular facts of those cases.

■ Fay v. Noia, *supra*, 372 U.S. at 441, 83 S.Ct. at 850, states that "if the States withhold effective relief, the federal courts have the power and the duty to provide it." Our finding that the circumstances of this case did in fact render Missouri's available post-conviction process ineffective to protect the rights of the prisoner means that this Court has the power and duty to exercise its habeas jurisdiction on the merits, and, pursuant to Section 2243, to dispose of the case as law and justice require.

The guiding principle to be followed was stated by Mr. Justice Cardozo in Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934):

> [J]ustice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

■ ·Neither law nor justice require this Court to grant petitioner more relief than that which he could have possibly obtained had he been properly represented in connection with either of his two direct appeals in the Supreme Court of Missouri.[2]

The maximum relief obtainable on direct appeal in the Supreme Court of Missouri in regard to the federal confession question presented would have been a remand to the state trial court for it to conduct an appropriate hearing in accordance with the federal constitutional rule stated in Jackson v. Denno. It is true that Rogers v. Richmond, 365 U.S. 534, 549, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (a confession case which antedated both Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) and Jackson v. Denno), the Supreme Court remanded to the lower federal courts with a direction to ·hold the case "in order to give the State opportunity to retry petitioner." Jackson v. Denno, however, was decided three years later. That case was the first case which directed that the federal courts allow the state trial court an opportunity to conduct a post-trial evidentiary hearing on the voluntariness issue of a confession. Mr. Justice White stated in Jackson v. Denno (footnote 22, page 394–395 of 378 U.S., page 1790 of 84 S.Ct.) that "it does not appear that the Court considered the possibility of a more limited initial hearing in the state court with a new trial dependent upon the outcome of the hearing [when it decided Rogers v. Richmond]." We must and do assume that the Supreme Court of Missouri would have followed Jackson v. Denno had it reached that question on direct appeal.

## IV.

The Supreme Court of Missouri on petitioner's second direct appeal appropriately noted that extensive use was made at petitioner's trial of a statement of three hundred and· sixty-four questions and answers taken by highway patrolmen after petitioner's arrest (432 S.W. 2d at 595). That court stated that "at no time *during the trial* did the appellant assert that he was physically or

2. Cases such as Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); United States ex rel. Weston v. Sigler, 308 F.2d 946 (5th Cir. 1962), cert. denied 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143 (1963); Coffman v. Bomar, (M.D.Tenn., 1963) 220 F.Supp. 343; Miller v. Bomar, (M. D.Tenn., 1963) 230 F.Supp. 204; Tucker v. Meadows, (M.D.Tenn., 1964) 234 F. Supp. 882; Ingram v. Peyton, (4th Cir. 1966) 367 F.2d 933; and Tindol v. Beto, (5th Cir. 1968) 392 F.2d 582, which grant either a new appeal or a new trial involved factual situations in which a particular state prisoner had been totally deprived of his right of direct appeal.

In this case the possible constitutional infirmity may be explored and, if found to exist, corrected by the State trial court holding a proper Jackson v̇. Denno evidentiary hearing or by the granting of a new trial. The Jackson v. Denno alternative was not available in the group of cases just cited.

mentally abused or coerced or that the statement was other than voluntary" (432 S.W.2d at 595). But the Supreme Court of Missouri reliably found that petitioner testified at his Rule 27.26 hearing, among other things, that his wife, father, mother and brother had all been arrested before his arrest and that he was told that they would not be released from various jails until he had signed a statement confessing his guilt (432 S.W.2d 596). The transcript of the Rule 27.26 motion further shows that petitioner, a man with a fourth or fifth grade education, had spent three days and three nights in the "weeds and woods" before his arrest. That transcript also shows that the members of petitioner's family above mentioned, together with numerous other members of his family, were in fact arrested and kept in various jails for a period of five days. Petitioner's wife, from whom he is now apparently divorced, testified that she was pregnant at the time and suffered a miscarriage while in jail. The Supreme Court of Missouri noted that "the prosecution elected not to offer any evidence at the 27.26 hearing" (432 S.W.2d at 596).

Although petitioner's *pro se* amendment to his Rule 27.26 motion when appropriately read, placed the voluntariness of petitioner's confession in factual issue, the general thrust of the Rule 27.26 hearing was not properly directed to that question. It is clear, both from the transcript of the trial and from the evidence adduced at the Rule 27.26 hearing, however, that the constitutional rule articulated in Jackson v. Denno was violated. The state trial judge never made a finding that petitioner's statement was freely and voluntarily given before extensive use of that statement was made in petitioner's trial.

We also find and determine that the Rule 27.26 hearing was not conducted in a manner consistent with principles enunciated in Jackson v. Denno, particularly when that hearing is viewed in light of the application of those principles made in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), and on the second appeal of that case reported in 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967). The significant fact, of course, is that the prosecution elected not to offer any evidence at the post-trial hearing. On the first *Sims* appeal [385 U.S. 538, 87 S.Ct. 639] the Supreme Court determined that the petitioner had testified to facts which, if true, would have rendered his confession involuntary and the result of coercion. It noted that petitioner's claim of mistreatment was uncontradicted at the first state court hearing. Although given the opportunity to conduct an appropriate Jackson v. Denno hearing, the Georgia state trial judge, on the basis of the original trial record alone, determined that the confession had been voluntary and denied a new trial. On the second appeal [389 U.S. 404, 88 S.Ct. 523] the Supreme Court reversed, stating that:

> The State had every opportunity to offer the police officers, whose failure to testify had already been commented upon here, to contradict petitioner's version of the events. Its failure to do so when given a second chance lends support to the conclusion that their testimony would not, in fact, have rebutted petitioner's.[3] [389 U.S. 406, 88 S.Ct. 525]

---

3. The Supreme Court also stated in the second *Sims* appeal that:

> The reliance by the State on subsequent warnings made to petitioner prior to his confessing is misplaced. Petitioner had been in the continuous custody of the police for over eight hours and had not been fed at all during that time. He had not been given access to family, friends, or counsel at any point. He is an illiterate, with only a third grade education, whose mental capacity is decidedly limited. Under such circumstances the fact that the police may have warned petitioner of his right not to speak is of little significance. See Beecher v. Alabama, *supra*, 389 U.S. 35, at 37, n. 4, 88 S.Ct. 189, 19 L.Ed.2d

## V.

The Supreme Court of Missouri, on the second direct appeal, *sua sponte*, recognized the existence of the Jackson v. Denno question presented. That court, however, applied a state rule of waiver articulated in State v. Meiers, Mo.Sup. Ct.Div. 1, 1967, 412 S.W.2d 478, and construed particular findings of the trial court made at the Rule 27.26 hearing "to be a determination of voluntary waiver on the part of the appellant" [412 S.W. 2d at 481]. It then decided that "our ruling on the issue of waiver is dispositive of the case and we do not, therefore, reach the issue of voluntariness" [432 S.W.2d at 597].

The record in this case supports a finding that petitioner's trial counsel failed properly "to object to the use of the statement." [4] Such a failure may well be considered a "waiver" under the state procedural rule announced by the Supreme Court of Missouri in State v. Meiers, *supra*. That case states that "our rule is that constitutional questions must be raised in the trial court at the earliest opportunity consistent with orderly procedure * * *". [432 S.W. 2d 596].

But the requirements of that state procedural rule fall far short of the federal standard of waiver articulated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Fay v. Noia, *supra*. We are therefore required to find that there is an absence of evidence in this case that could be said to support a finding that, in the language of Fay v. Noia, the petitioner "after consultation with competent counsel * * * understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts." Indeed, there is no evidence in this case that petitioner, until he was represented by appointed counsel in this Court, was ever represented by counsel who knew what his federal rights were. And certainly there is no evidence petitioner "actively and knowingly participated in [his trial] counsel's decision" [432 S.W.2d at 596]. That factual question was not explored either at the trial or at the abortive Rule 27.26 hearing.

## VI.

Having determined that the voluntariness question cannot be disposed of on any theory of waiver, we are required to reach the question of whether petitioner's trial counsel's failure properly to object to the use of the statement now forecloses petitioner from raising that question in an appropriate post-conviction proceeding.

Controlling Supreme Court of the United States cases and cases in our

---

35. Compare Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). [389 U.S. 407, 88 S.Ct. 525].

4. Petitioner's counsel never objected to use of the statement on the ground it was an involuntary statement. He did object that particular questions asked in regard to the statement were improper in that they were outside the scope of direct examination (pp. 136 and 137 of the trial transcript). It cannot, however, be fairly said that the offer of defense counsel to "read the whole statement from start to finish" and the explicit willingness of the appellant that "this whole record in this statement" be "given to the jury" constitute an unequivocal waiver" (432 S.W.2d 596). While the record shows that defense counsel twice made such an offer (pp. 140 and 182 of the trial transcript), it also shows that the statement was only identified as State Exhibit 5, page 134, ibid, and that it was never received in evidence (p. D, ibid.) The following occurred on page 182–183 :

Q. (By Mr. Welker) Are you willing that this whole record in this statement that you made up there at Sikeston be given to the jury?
A. Yes, sir.
MR. HUNTER, JR.: I object to that for the very reason he has nothing to say about it. The State will introduce it at its own time and it's the State's exhibit.
THE COURT: That's right. His counsel said yesterday that he was perfectly willing that the whole thing be read.
MR. HUNTER, JR.: Yes, sir, and it shall be done.
The difficulty with the matter is that the "agreement" was never consummated. We so find.

Court of Appeals require that a negative answer be given that question. Fay v. Noia, *supra*, 83 S.Ct. at 848, states that "the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings." Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1965), applied that principle to a failure to make a timely objection to the admission of evidence. It stated that a state prisoner, after an unsuccessful direct appeal, nevertheless "might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim." Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), reversed the judgment of the Supreme Court of Ohio because "petitioner neither personally waived his right nor acquiesced in his lawyer's attempted waiver." Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 297, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967), held that neither Henry v. Mississippi nor Fay v. Noia could be said to support the State's claim that "since Hayden failed to raise the search and seizure question at trial, he * * * should be denied an opportunity to assert his claim in federal court." The per curiam opinion in Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L. Ed.2d 31 (1967) is not to the contrary. See also Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), which applied the search and seizure rule of Warden, Md. Penitentiary v. Hayden to federal court postconviction proceedings pursuant to Section 2255, Title 28, United States Code.

In Mitchell v. Stephens, (8th Cir. 1965) 353 F.2d 129, cert. denied 384 U. S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042, Judge Blackmun made a careful and exhaustive analysis of all the applicable cases. In *Mitchell* defense counsel at trial not only did not object to the voluntariness of the statement, they expressly stated in response to the trial judge's inquiry at the trial that they were not contending that the confession was involuntary. It was nevertheless held that "under Jackson v. Denno, Mitchell is entitled to an independent state court determination as to the voluntariness of his confession" (353 F.2d at 145). And in State of Minnesota ex rel. Holscher v. Tahash, (8th Cir.1966) 364 F.2d 922, 927, the Court of Appeals stated that "we are not inclined, however, to dispose of the Jackson v. Denno aspect of this case on any theory of waiver * * * Although trial counsel may not have objected to the statements' introduction, a like fact did not change the result in Jackson v. Denno." See also Judge Lay's discussion of waiver in his article entitled "Problems of Federal Habeas Corpus," 45 F.R.D. 45 at 55, et seq. At page 59 Judge Lay commented on Fay v. Noia's emphatic incorporation of the waiver standards enunciated thirty years ago in Johnson v. Zerbst and stated that this "meant that even if the state court found that there had been a bypass of a timely objection or other state procedural remedy, and that a state prisoner was estopped by this 'adequate state ground' from raising a constitutional question either on direct appeal or in a state collateral attack, nevertheless he could get a hearing on the question in the federal district court if the federal court independently determined that the failure to utilize the state procedure had not been a deliberate bypass *by the petitioner himself*." [Emphasis Judge Lay's].

█ Regardless of what the Missouri rule as articulated in the decisions of the Supreme Court of Missouri may be in regard to how and when the question of voluntariness of a defendant's confession must, as a matter of state law, be raised, we find and determine as a matter of federal law that the procedures in fact followed by the trial court in the trial of petitioner's case did not comply with the federal constitutional rule enunciated in Jackson v. Denno. We further find and determine as a matter of federal law that petitioner's trial counsel's failure to object properly at

trial did not and does not now deprive petitioner of the benefit of that rule in this federal court.

## VII.

We, at long last, arrive at the question of remedy. Although the procedural steps taken were not the same, Judge Van Pelt of the District of Nebraska was presented with basically the same question of remedy when the case of Homan v. Sigler was first before him in 1967. In his first opinion, reported in 278 F.Supp. 201, he decided that the Supreme Court cases and the Court of Appeals for the Eighth Circuit cases to which we have made reference command that once a federal habeas court determines that the constitutional rule of Jackson v. Denno was in fact violated, further federal court action should be stayed in order to afford the State the opportunity to give the petitioner a full, fair, adequate evidentiary hearing on the voluntariness issue in the State trial court and for it to make appropriate findings of fact and conclusions of law.

Such a remedy means that if it is eventually appropriately determined that the petitioner's statements were in fact and law voluntarily made, his custody under his original conviction may properly be adjudged to be lawful. A finding of involuntariness, of course, would necessitate either petitioner's release or the granting of a new trial. In Homan v. Sigler I, Judge Van Pelt ordered that the petitioner be released at the end of a ninety day period unless within that time he was afforded an appropriate Jackson v. Denno hearing in the State court, or, in the alternative, granted a new trial.

Homan v. Sigler, D.Neb.1968, 283 F.Supp. 404, one of the cases upon which petitioner places his greatest reliance, merely reflects Judge Van Pelt's second order which directed that the petitioner be released and permanently discharged upon the factual finding that Nebraska had neither granted petitioner an appropriate Jackson v. Denno hearing nor had it granted petitioner a new trial. Judge Van Pelt's second order reported in Homan v. Sigler II would not be appropriate in this case until and unless the State of Missouri should fail to comply with the order we shall enter in this case which will, in substance, follow the pattern of Judge Van Pelt's first order.[5]

Petitioner has been represented in this Court under its appointment by John E. Besser, Esq., Kansas City, Missouri, a member of the Bar of this Court. The Court is grateful for the *pro bono publico* services rendered petitioner which have been in the highest tradition of the Bar. We are also grateful for the cooperation extended counsel and the Court and the excellent briefs filed by the Honorable Gene E. Voigts, First Assistant Attorney General, who represented respondent.

5. In addition to Homan v. Sigler, II, petitioner relies upon Tyler v. Croom, (E.D. N.Car., 1968) 288 F.Supp. 870, to support his contention that petitioner should now be unconditionally released. That case involved an ineffective assistance of counsel claim, not a Jackson v. Denno confession question. See the first opinion in Tyler v. Croom, reported in 264 F.Supp. 415 (1967). Chief Judge Butler in 288 F. Supp. at 871, suggests that the procedure he adopted in his first Tyler opinion had been approved by the Third Circuit in United States ex rel. Singer v. Myers, (3rd Cir. 1967) 384 F.2d 279. Although *Myers* obviously involved a Jackson v. Denno question, that case did state that "the facts in Tyler v. Croom, 264 F.Supp. 415 (E.D.N.C.1967), are analogous to those in the present case."

For reasons fully stated in White v. Swenson, (W.D.Mo. en banc, 1966) 261 F.Supp. 42, we respectfully disagree with the implication that after full exhaustion of all available state remedies in regard to a federal question other than a Jackson v. Denno question, a federal district court has discretion to again abstain from exercising its habeas jurisdiction. A rule consistent with *Tyler's* rationale would certainly reduce the burden of state prisoner habeas in the federal courts. But, in our judgment, such a rule is not consistent with the Supreme Court's habeas trilogy or with the commands of Sections 2243 and 2254, Title 28, United States Code.

## ORDER

For the reasons stated, it is

Ordered that petitioner be released from his present confinement in the Missouri Department of Corrections and be permanently discharged from custody at the end of ninety (90) days from the date of this order, unless within that time he has been afforded an appropriate plenary evidentiary hearing in the State trial court in accordance with the standards articulated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964), on the issue of the voluntariness of the three hundred and sixty-four question and answer statement used in his original trial, or, in the alternative, to grant petitioner a new trial. It is further

Ordered that such hearing shall be conducted and an appropriate order entered within the ninety (90) day period in full compliance with the requirements of Missouri Supreme Court Rule 27.26, as that rule has been construed by the Supreme Court of Missouri. It is further

Ordered that nothing stated in this opinion or order of this Court shall be construed as any limitation on petitioner's right to file and the State trial court's duty to hear any new Missouri Supreme Court 27.26 motion which petitioner may wish to file in conjunction with the Jackson v. Denno hearing first ordered. It is further

Ordered that this Court retain jurisdiction of this cause pending further developments. The Office of the Attorney General shall keep this Court advised of any and all action taken by the State of Missouri in connection with this Order and shall, if necessary, make appropriate application for any extension of the ninety (90) day period of time above provided before the expiration of said period. No extension will be granted except for good cause shown which shall be stated with particularity in any application filed.

## ADDENDUM

Our opinion in this case was fully prepared and was in the course of being circulated among the other active judges of this Court for their suggestions when we received the slip opinions from the Eighth Circuit in Parker v. Sigler, (8 Cir.1969) 413 F.2d 459; and in Johnson v. Bennett, (8 Cir.1969) 414 F.2d 50. It is appropriate that our opinion show that we gave consideration to both those cases before entering our order in this case.

### I.

The relief granted in this case is not inconsistent with that granted in Parker v. Sigler. Indeed, the rationale of *Parker* supports the order entered in this case. In *Parker*, the federal district court was reversed for its failure to have granted habeas. The Eighth Circuit's order of remand directed only that Nebraska be given ninety days within which "to retry Parker" and provided that "if the defendant is not retried within the time hereinbefore fixed or within any extension of such time as may be allowed, writ of habeas corpus shall be granted and the defendant shall be released." Nebraska was not afforded an opportunity to conduct an appropriate Jackson v. Denno hearing, as our order provides.

The *Parker* order, under the circumstances of that case, is not inconsistent with the order to be entered in this case in spite of the fact our order permits Missouri to conduct a proper Jackson v. Denno hearing or grant a new trial, whereas *Parker* conditions relief on the granting of a new trial alone. The Court of Appeals' discussion of Jackson v. Denno shows that the difference between the two orders is only apparent, but not real.

In *Parker*, the Court of Appeals first noted that Jackson v. Denno had remanded that case "with direction to allow the State a reasonable time to afford Jackson a hearing which would afford him a reliable determination by the

trial court on the voluntariness issue or a new trial, failing which Jackson is entitled to a release." But the Court of Appeals added:

Such would be the appropriate relief to grant here *unless it can be said on the record as a matter of law that no basis exists to find the confession voluntary.* [Emphasis ours].

Unlike this case, *Parker* involved a factual situation in which "in both the state and federal post conviction proceedings, a full opportunity was afforded the State and the defendant to offer any relevant evidence." The decisive issue before the federal courts was whether the Nebraska courts had made "a reliable finding of fact in the prior state court proceedings upon the voluntariness issue upon which [under the teaching of Townsend v. Sain] Judge Van Pelt could properly rely." The Court of Appeals noted that under the undisputed factual situation presented in *Parker* "the convicting court made no reliable determination of the voluntariness issue before admitting the confession in evidence" and that "all that appears in the record is a bald statement overruling defendant's appropriate objection." Chief Judge Van Oosterhout stated that under those circumstances "it is plain and clear that the standards set out by the Nebraska Supreme Court fall far short of meeting the Jackson v. Denno standards."

The Eighth Circuit in *Parker*, following the command of Haynes v. Washington, 373 U.S. 503, 515–516, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), stated that "we shall proceed to determine whether any record basis exists in the present case for a determination that the confession was voluntary." It held that "the standard to be applied in determining the vital issue before us is whether considering the totality of the circumstances the confessions made by the defendant were voluntary. Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77; Clewis v. Texas, 386 U. S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423; Haynes v. Washington, *supra* 373 U.S. 503, p. 513, 83 S.Ct. 1336."

After application of the appropriate federal standard to the factual situation presented, the Court of Appeals stated that "we hold *as a matter of law* that when the totality of the circumstances are considered and when the facts in this case are compared with those in the cases hereinabove discussed, a determination is required that the confessions received in evidence were coerced and involuntary, and that the defendant's constitutional rights were violated by the reception of the confessions in evidence and the submission thereof to the jury" [emphasis ours].

The factual situation in this case, as distinguished from that presented in *Parker*, is not established by any post-conviction evidentiary hearing contemplated by Jackson v. Denno or otherwise.

It is therefore impossible in this case for any court, State or federal, to make any determination as a matter of law concerning the voluntariness of petitioner's confession because the failure of the State to adduce any evidence at the post-conviction evidentiary hearing produced a truncated hearing which clearly violated the constitutional rule established by Jackson v. Denno. And certainly an examination of the trial transcript can yield no valid data concerning the totality of the circumstances surrounding petitioner's confession because those matters were not the subject of inquiry in the trial court.

We therefore can not say anything *as a matter of law* about the totality of the circumstances surrounding petitioner's confession. All we can say is that appropriate factual inquiry into those circumstances has not, but should and must be made. It is therefore appropriate that our order direct that the State be given the opportunity to hold a proper Jackson v. Denno hearing, or grant petitioner a new trial, and failing one or the other, to release the petitioner. *Parker*, in our judgment, does not suggest anything to the contrary; rather, the ra-

tionale of that case supports the order made in this case.

## II.

Johnson v. Bennett need be noted only because of its consistent treatment of the problem of waiver discussed in Part V of our opinion in this case. *Johnson* involved a 1934 murder case in which the defendant's trial counsel had not properly based his objection upon a specific federal constitutional ground. The Court of Appeals, en banc, stated that "we recognize that even a constitutional claim, under appropriate circumstances, may be the subject of waiver in the state courts," citing Fay v. Noia, 372 U. S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). But Judge Blackmun added:

> In Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), a case emanating from the Eighth Circuit, the Supreme Court very recently cautioned us that the failure to raise a constitutional claim on direct appeal does not deprive a federal post-conviction court of power to adjudicate the merits of that constitutional claim. In footnote 3 of the opinion, 394 U.S. at 220, 89 S.Ct. 1068, the suggestion is made that the real question is whether the case is one in which a court's refusal to act would be appropriate. In view of the implications of *Kaufman* we must reject any suggestion of waiver. See also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Fay v. Noia, *supra*, 372 U.S. 391, at 439, 83 S.Ct. 822; Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

We believe that Johnson v. Bennett shows that we correctly cited and relied upon the appropriate Supreme Court of the United States cases in ruling the waiver question presented in this case.

In conclusion, our study of the two most recent Court of Appeals cases discussed in this addendum convinces us, for the reasons we have stated, that no modification should be made in our opinion and order as originally written.

## APPENDIX A

1. Petitioner is presently incarcerated in the Missouri State Penitentiary pursuant to a judgment and sentence entered November 30, 1961, by the Circuit Court of New Madrid County (PX 1, pp. 259, 260).

2. Petitioner was not represented by counsel when he appealed the aforesaid judgment, and the Missouri Supreme Court affirmed the conviction on October 8, 1962, in an opinion reported at 360 S.W.2d 642.

3. On April 26, 1965, a motion to vacate the judgment and sentence was filed pursuant to Rule 27.26 of the Missouri Rules of Criminal Procedure (PX 8, pp. 1–5b). This motion was prepared by Ralph Woody, an inmate of the Missouri State Penitentiary (Tr. 6, 7, 20).

4. An amended motion to vacate pursuant to Rule 27.26 was filed on November 26, 1965 (PX 8, pp. 5c to 9). This amended motion was drafted by Ralph Woody, an inmate of the Missouri State Penitentiary (Tr. 7, 20).

5. After a hearing on July 2, 1966, the motion to vacate was overruled by the Circuit Court of New Madrid County on August 13, 1966 (PX 8, p. 69).

6. Petitioner filed a petition for writ of habeas corpus in the Federal District Court for the Western District of Missouri on June 2, 1967, alleging that he had been deprived of his Sixth Amendment right to counsel on appeal (Case No. 1202).

7. By order dated August 11, 1967, as modified on August 15, 1967, this Court granted the petition for writ of habeas corpus but ordered that the writ would not issue if the Missouri Supreme Court recalled its mandate affirming the conviction of petitioner and granted a new appeal with appointed counsel.

8. By order dated September 11, 1967, the Missouri Supreme Court ordered that its judgment affirming petitioner's conviction be set aside; that a

new appeal be granted; that the appeal from the judgment overruling the motion to vacate be consolidated with the new direct appeal; and that the Circuit Court of New Madrid County appoint counsel to represent petitioner on the consolidated appeal (PX 11).

9. By order filed September 21, 1967, the Circuit Court of New Madrid County appointed Raymond A. Klemp of Caruthersville, Missouri, to represent petitioner on the consolidated appeal (PX 13).

10. On or about November 12, 1967, Raymond Klemp requested Ralph Woody to prepare a draft of the brief that was to be filed in petitioner's consolidated appeal (Tr. 21, 22, 45).

11. All of the relevant documents and transcripts were turned over to Ralph Woody by Raymond Klemp on or about November 12, 1967 (Tr. 21, 22, 45).

12. Ralph Woody had never attended law school and was not licensed to practice law in Missouri or any other state (Tr. 19).

13. Although Raymond Klemp was in effect granted leave to file a new motion to vacate under Rule 27.26, Mo.R.Crim. Pro., he did not consider the possibility or advisability of filing such a motion, and he did not advise petitioner of the possibility of filing such a new motion (Tr. 42, 43, 44).

14. Between July 2, 1966, and March 25, 1969, Raymond Klemp did not see or converse with petitioner (Tr. 8, 9, 16, 17, 39).

15. Raymond Klemp did not write or otherwise communicate with petitioner concerning the substance of the consolidated appeal (Tr. 13, 41).

16. The brief on the consolidated appeal was due on January 27, 1968 but was not filed on or before that date. (Tr. 46).

17. Raymond Klemp did not seek nor obtain an extension of time in which to file said brief (Tr. 48).

18. Ralph Woody never prepared a draft of the required brief, and on Janu-

ary 26, 1968, Ralph Woody was incarcerated in the Pemiscott County jail (Tr. 22).

19. On February 20, 1968, Ralph Woody was released from the Pemiscott County jail (Tr. 23).

20. On February 20, 1968 Raymond Klemp came to Ralph Woody's home and obtained the transcripts and records pertaining to the consolidated appeal (Tr. 23, 24).

21. The transcripts and records pertaining to petitioner's consolidated appeal had been in Ralph Woody's possession from November 12, 1967 to February 20, 1968 (Tr. 25).

22. Raymond Klemp did not make any factual or legal investigation into the merits of the errors raised in the motion for new trial.

23. On February 20, 1968, Raymond Klemp prepared a brief that was filed on February 21, 1968 (Tr. 50, 51).

24. Raymond Klemp forgot that the brief was supposed to include points and issues relating to the direct appeal from the judgment entered November 30, 1961; and the brief made no mention whatsoever of the direct appeal (Tr. 53, 54; PX 28).

25. The brief was limited solely to the appeal from the order overruling the motion to vacate (Tr. 53, 54, 60).

26. The major portion of the brief was copied word for word from the motion to vacate filed April 26, 1965 (PX 8, pp. 1–5b) and the amended motion to vacate, filed November 26, 1965 (PX 8, pp. 5c–9), both of which were drafted by Ralph Woody (Tr. 7, 20).

27. The brief did not comply with the rules of the Missouri Supreme Court and in particular Rule 83.05 of the Missouri Rules of Civil Procedure.

28. Raymond Klemp realized that the brief did not comply with the Rules of the Missouri Supreme Court (Tr. 63).

29. The answer brief filed by the respondent raised points not covered in the brief filed by Raymond Klemp (PX 31, Tr. 55), and yet no reply was filed by Raymond Klemp.

30. That a motion for reinstatement of the cause styled "State of Missouri, Respondent, v. Dan Whestley Gray, Appellant," Case Nos. 49313 and 52628, in the Supreme Court of Missouri, to the court's appellate docket was filed by the Office of the Attorney General for the State of Missouri (PX 36, PX 37).

31. That on September 11, 1967, pursuant to the motion filed by the Office of the Attorney General, the causes set forth in Finding of Fact No. 30 were reinstated on the court's appellate docket and the Circuit Court of New Madrid County, Missouri, was ordered to appoint counsel to represent petitioner herein (PX 11).

32. That a copy of the order of this Court entered in cause styled "Dan Westley Gray, Petitioner, v. Harold R. Swenson, Warden," Case No. 1202, in the United States District Court for the Western District of Missouri, Central Division, dated August 11, 1967, as amended August 15, 1967, was forwarded to Raymond Klemp, attorney appointed to represent the petitioner (PX 37), and was received by said attorney for petitioner (Tr. 69–70).