Melvin Dew **RENFRO**, Movant-Appellant,

v.

**STATE of Missouri**, Respondent.

No. 54566.

Supreme Court of Missouri,
Division No. 2.

Oct. 13, 1969.

———◆———

J. Arnot Hill, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

In June 1965 Melvin Dew Renfro was tried and found guilty of murder in the second degree in killing Barbara Mae Warrene. A jury fixed his punishment at 35 years' imprisonment. In the trial of his case and on appeal he was represented by, as this court said, "able defense counsel"— the same lawyer who now represents him on this appeal in this proceeding to vacate

the judgment under Rule 27.26, V.A.M.R. The opinion of this court on his direct appeal is set forth in State v. Renfro, Mo., 408 S.W.2d 57 and upon this appeal the full transcript has again been read and considered. On June 3, 1968, Renfro filed, pursuant to amended rule 27.26, a motion to vacate the original judgment and sentence. The motion is unnecessarily verbose, abstruse and evasive and need be noticed here only to say that several of the claims of the motion were raised and fully considered on his direct appeal; for example, his attack upon the veracity of one of the state's witnesses, Gail Harvey, and the assignment that the state was improperly permitted to cross-examine and impeach her. Also it may be noted in passing that his defense of accidental killing was submitted and found against him and the transcript of the record on the direct appeal supports and justifies the jury's verdict of murder in the second degree.

In this proceeding Renfro claims that a statement he gave to police the day he shot and killed Barbara was involuntary and that its admission in evidence, in the language of his counsel, was "in violation of due process as guaranteed by the Fourteenth Amendment of the Constitution." Even though the statement was introduced in evidence "by his counsel, and even though his counsel was a lawyer of many years' experience in the trial of criminal cases" it is asserted that the statement was so manifestly prejudicial, "that he did not receive the effective assistance from counsel as guaranteed him by the Sixth Amendment" and, therefore, the trial court of its own initiative should have intervened and excluded the statement or statements—the fact is that it is a written statement, and finally in this connection counsel say "We have found no decision which we can cite in support of this assignment of error." The state has briefed and argued every facet of this nebulous and unique assignment of error but tempting as it may be to examine the claims in detail it is not necessary to do so.

Upon this 27.26 proceeding the court again gave Renfro a full hearing, he testified at length to every phase of his former trial including "my contention it was an accident. It wasn't murder." To indicate, incidentally, his high intelligence: "Q. And therefore it couldn't be murder, manslaughter, any of the degrees of murder? A. Well, it can be manslaughter, I would think, but I don't see how they can get murder out of it." In addition to Renfro's testimony, the court had before it (and it was the same judge in both instances) the full transcript of the original trial. But as indicated, there was a full hearing on this 27.26 motion and the court made a lengthy and careful finding of fact. The court pointed out that Renfro's statement to the police was first mentioned in the state's cross-examination of him—the statement was being used "for the purpose of impeachment." Defendant's counsel objected to the prosecutor's "reading from the defendant's statement piecemeal. I think the entire thing should go in." Defendant's counsel, as the court found, made no other objection to the introduction of the statement. In addition his counsel used this opportunity to examine his client at length in an attempt to show that he was intoxicated when he shot Barbara and at the time he gave the statement, had no recollection of it and could not by reason of his drunkenness have voluntarily given a statement. The court made this explicit finding: "Now, it is obvious from the manner in which this testimony came in and the nature of counsel's conduct that the matter of handling the statement was not such that any Jackson v. Denno type of hearing would be required. Defense counsel, who was probably one of the most experienced defense attorneys at this bar, J. Arnot Hill, formerly Chief Assistant Prosecuting Attorney, now the Chief Public Defender, had had experience probably in excess of 25 years in the trial of criminal cases. I know he has tried many murder cases. I am satisfied that Mr. Hill did what he did not because he overlooked any possible claim that the

statement was not voluntary, but *because it was part of the trial strategy* (emphasis supplied) to attempt to establish that the defendant was intoxicated at the time the offense occurred. It was his theory at the trial he was intoxicated in (sic) that the shooting was accidental. In an effort to show that, it is my judgment that he took this course, that is, he interrogated the defendant in the presence of the jury with respect to his condition in an effort to buttress that defense, and in that connection I think he did this from the standpoint of trial tactic and trial strategy."

In addition, as to the voluntariness of the statement Renfro gave Detective Witcig, the court found "in weighing the credibility" of Renfro and Witcig "that the statement was voluntary beyond any reasonable doubt." Aside from the problem of defendant's waiver of a separate hearing as to the voluntariness of his statement or the duty of the court to intervene willy-nilly, and aside from the defendant's duty to timely object and procedurally protect his Fourteenth Amendment or other constitutional rights (State v. Meiers, Mo., 412 S.W.2d 478), the findings of the trial court as to the effectiveness of counsel and the voluntariness of any statement appellant may have made are indeed supported by this record and the consequence is that he is entitled to no relief in this court. Crosswhite v. State, Mo., 426 S.W.2d 67; State v. Wilkinson, Mo., 423 S.W.2d 693. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM: The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alternate J., concur.

FINCH, J., concurs in separate concurring opinion filed.

FINCH, Judge (concurring).

I concur in the principal opinion herein except that portion of the final paragraph which mentions waiver by defendant of a separate hearing and also refers to a duty on the part of defendant to object and protect his constitutional rights. I do not understand that the trial court in making its findings and conclusions relied on such grounds, and I would not rely thereon. In my view, they are not necessary to our opinion affirming the trial court's findings, conclusions and judgment as not being clearly erroneous.