**Melvin D. RENFRO, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Respondent.**

**Civ. A. No. 17760–1.**

United States District Court,
W. D. Missouri, W. D.

Aug. 14, 1970.

B. John Readey III, Kansas City, Mo., for petitioner.

John C. Danforth, Atty. Gen., State of Missouri, Kenneth M. Romines, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

I.

This is a State prisoner habeas corpus case. Petitioner's conviction of second degree murder was affirmed on direct appeal in State v. Renfro, (Sup.Ct.Mo., Div. 2, 1966) 408 S.W.2d 57. A subsequent trial court denial of petitioner's Rule 27.26 motion was affirmed in Renfro v. State (Sup.Ct.Mo., Div. 2, 1969), 445 S.W.2d 278.

Petitioner alleged in paragraph 10 of this Court's standard habeas corpus petition form that:

(a) Petitioner's conviction rests upon an alleged statement made by him at the time of arrest, which was obtained in violation of his constitutional rights under both the Fifth and Fourteenth Amendments.

(b) Petitioner was denied the right to effective representation by counsel at the time of trial and on subsequent appeals.

■ We recognize that the parties have stipulated that *both* "federal questions presented may be submitted on the stipulated record." We also recognize that neither party has raised any question in regard to the petitioner's exhaustion of his available State court remedies in regard to either question. But we also recognize, as most recently reiterated by the Court of Appeals in Gray v. Swenson, 430 F.2d 9 (8th Cir., decided August 5, 1970) (affirming Gray v. Swenson, 302 F.Supp. 1162 (W.D.Mo., 1969)), that all federal courts are "firmly of the view that the exhaustion of State remedy rules should ordinarily be strictly adhered to."

This Court has always held and applied that view. Frankum v. Swenson, 288 F.Supp. 100 (W.D.Mo., 1968) is a good example of an earlier case in which consistent with the teaching of Baines v. Swenson, 384 F.2d 621 (8th Cir., 1967); Collins v. Swenson, 384 F.2d 623 (8th Cir., 1967); and the *en banc* decision of this Court in White v. Swenson, 261 F. Supp. 42 (W.D.Mo., *en banc*, 1966), we refused to accept the parties' stipulation concerning exhaustion and refused to exercise federal habeas jurisdiction in a case in which we concluded that "the attention of the Supreme Court of Missouri was not fairly focused on the federal question presented by petitioner's claim of coerced plea." (288 F.Supp. at 103)

*Frankum*, as does this case, involved both a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964),

question and a "potential question of effective assistance of counsel" (288 F. Supp. at 104) which had not been adequately presented on the merits to either the State trial court or the Supreme Court of Missouri. We concluded in *Frankum* that the State postconviction evidentiary hearing conducted in the State trial court "did not comply with the command of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963) and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)" (288 F. Supp. at 103). But we also noted that the State postconviction hearing there involved had been conducted under old Rule 27.26 before its amendment became effective.

Accordingly, in *Frankum* we noted that the Supreme Court of Missouri had explicitly stated in State v. Maxwell, (Sup.Ct.Mo., Div. 2, 1967) 411 S.W.2d 237, that it had made a radical change in its postconviction procedures. We also noted that court's decisions in Crosswhite v. State, (Mo.Sup.Ct., Div. 2, 1968) 426 S.W.2d 67; State v. Stidham, (Mo.Sup.Ct., *en banc*, 1967) 415 S.W.2d 297; and State v. Fritz, (Mo.Sup.Ct., Div. 1, 1968) 429 S.W.2d 699, which appropriately implemented the proper administration of amended Rule 27.26 in order that postconviction proceedings which would be conducted under that amended rule would be in accord with applicable and controlling federal standards. We stated in *Frankum* (as we have in many other cases) that the Missouri judiciary, both appellate and trial, has more effectively than any State in the Union recognized that "the answer to possible conflict between state and federal courts lies in the improvement of State postconviction procedures which, when properly administered, comply with the commands of the trilogy" (288 F.Supp. at 104).

In *Frankum*, however, and unlike this case, *neither* petitioner's coerced plea claim *nor* his ineffective assistance claim had been properly presented to the

State courts on their respective merits. Under the particular circumstances presented in *Frankum,* we therefore concluded that we could properly refuse to exercise federal habeas jurisdiction over *either* claim because of our confidence that "the new procedures commanded by amended Rule 27.26 will be followed to the end that all possible claims for relief, both state and federal, will be included in a new Rule 27.26 motion and that all available evidence will be adduced in the state trial court concerning such claims" (288 F.Supp. at 105). We judicially recognized in *Frankum* that if Missouri's then relatively new postconviction procedures under amended Rule 27.26 were "followed by the State trial courts and by counsel representing postconviction movants, the requirements of the trilogy will be satisfied and federal court evidentiary hearings avoided" (288 F.Supp. at 105).

The transcript of the Rule 27.26 hearing in this case shows that no evidence whatsoever was adduced in regard to petitioner's ineffective assistance of counsel claim. That question was apparently injected into the case by a comment made by the trial judge at the close of the hearing.[1] The question was not briefed either in the State trial or appellate court. Neither court was afforded an appropriate or adequate opportunity to decide that question on the merits. Indeed, while the petitioner's *pro se* Rule 27.26 motion clearly and fully presented his Jackson v. Denno claim, the broadest reading of that motion cannot fairly be said to have put the petitioner's ineffective assistance of counsel claim in reasonable focus.

Considerations stated in *Frankum* concerning the avoidance of piece-meal postconviction litigation; the strictness with which exhaustion rules must be applied; and the relief appropriate in regard to a faulty Jackson v. Denno postconviction hearing, as most recently enunciated in Sigler v. Parker, 396 U.S. 482, 484, 90 S.Ct. 667, 24 L. Ed.2d 672 (1970), require that we find and conclude that petitioner has not exhausted his available State postconviction remedies in regard to his ineffective assistance of counsel claim.

As a practical matter, however, it should be added that petitioner's ineffective assistance of trial counsel claim rests almost entirely upon his claim that trial counsel did not properly protect his federally protected rights as articulated in Jackson v. Denno. If he fails to establish that those rights were in fact and law violated, it is difficult to conceive how petitioner can have any valid complaint about counsel's alleged failure to act in that regard.

At any rate, it is clear that a new Jackson v. Denno hearing must be conducted in the State trial court. We see no reason why that postconviction hearing may not be expanded in accordance with what was stated in *Frankum* to include a full and fair presentation of petitioner's ineffective assistance of trial counsel claim and thereby avoid a separate State postconviction hearing on that question and also avoid piecemeal consideration of a possible future appeal to the Supreme Court of Missouri in regard to that separate question. Our order will be broad enough to permit such a proceeding.

## II.

The considerations concerning exhaustion which relate to petitioner's Jackson

---

[1]. In deciding the Rule 27.26 appeal, the Supreme Court of Missouri also commented on petitioner's trial counsel's general reputation. It made a direct quotation and reference to an earlier comment it had made in its opinion on the petitioner's direct appeal in which it described Mr. Hill as "able defense counsel."

It is clear that the issue of the effectiveness of Mr. Hill's assistance was not presented on the direct appeal. The general reputation of counsel is never the controlling issue in an ineffective assistance case; the question is whether the assistance rendered in a particular case meets federal standards. The comments by both the trial and appellate court are not a proper ground upon which to base a conclusion of exhaustion in regard to petitioner's ineffective assistance claim.

v. Denno (378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) ) claim, however, stand on an entirely different footing. Petitioner has fully exhausted in regard to that separate federal claim. The circumstances of this case are not similar or comparable to those involved in *Frankum* for several reasons. Unlike *Frankum*, all State postconviction proceedings in this case were conducted under amended Rule 27.26 rather than old Rule 27.26. Both the trial court and the Supreme Court of Missouri recognized the existence of the Jackson v. Denno question and ruled it on the merits. It is apparent that the State trial court and the Supreme Court of Missouri were satisfied that an appropriate and adequate postconviction hearing had in fact been held in connection with that claim. As in *Gray*, the Supreme Court of Missouri has twice considered the validity of the petitioner's conviction. In spite of that prolonged litigation, the Supreme Court of Missouri has not found it necessary to require the trial court to hold a full-scale Jackson v. Denno postconviction evidentiary hearing in accord with the controlling federal standards articulated in that case. It is not reasonably to be expected that the State court's third view of the Jackson v. Denno question presented would be any different than the view taken on the two earlier occasions.

The circumstances of this case are comparable and quite similar to those presented in *Gray*. In this case, as in *Gray*, no question relating to exhaustion was or is presented in regard to whether Missouri has an "available State corrective process" within the meaning of Title 28 U.S.C. § 2254. The exhaustion question presented was, and is, whether, under the particular facts of each case, "circumstances [existed] rendering such [available] process ineffective to protect the rights of the prisoner" within the meaning of that section.

It is obvious that Missouri's amended Rule 27.26 provides an "available State corrective process" under which, if properly administered in accordance with the directions given State trial courts by the Supreme Court of Missouri in *Stidham*, *Crosswhite*, and *Fritz*, an appropriate Jackson v. Denno postconviction evidentiary hearing could be conducted in full accord with federal standards. But the fact that such a procedure is available does not mean that all postconviction evidentiary hearings conducted pursuant to amended Rule 27.26 are in fact and law conducted in accordance with the controlling federal standards articulated in Jackson v. Denno.

The Court of Appeals concisely stated in Gray v. Swenson that "Jackson v. Denno clearly requires a *full-scale* evidentiary hearing in the state court to determine the issue of voluntariness of the confession" [Emphasis ours.] Anything less than a "full-scale" evidentiary hearing does not comply with the controlling federal standards articulated by Jackson v. Denno. The fact that a postconviction evidentiary hearing was held under amended Rule 27.26 procedures, as distinguished from one held under old Rule 27.26, does not establish that Jackson v. Denno standards were in fact and law applied in that hearing. Indeed, a conclusion, based upon findings commanded by the record in a particular case, that Jackson v. Denno's command that a "full-scale" evidentiary hearing be conducted was not complied with tends to establish, in and of itself, the existence of "circumstances rendering [the available State corrective] process ineffective to protect the rights of the petitioner. See Woods v. Neirstheimer, 328 U.S. 211, 66 S.Ct. 996, 90 L.Ed. 1177 (1946); Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949); Jennings v. Illinois, 342 U.S. 104, 72 S. Ct. 123, 96 L.Ed. 119 (1951); United States ex rel. Mercer v. Commonwealth of Pennsylvania, 310 F.2d 25 (3rd Cir., 1962); Hunt v. Warden, Maryland Penitentiary, 335 F.2d 936, 940 (4th Cir., 1964); Harvey v. Mississippi, 340 F.2d 263, 268 (5th Cir., 1965); and Smith v. Kansas, 356 F.2d 654 (10th Cir., 1966).

Those cases, of course, reflect the long-standing rule reiterated in Fay v.

Noia that "if the States withhold effective relief, the federal courts have the power *and the duty* to provide it." (372 U.S., at 441, 83 S.Ct. at 850, 9 L.Ed.2d 837) [Emphasis ours.] "Effective relief" does not mean that a petitioner be granted the writ; it means that procedures consistent with the Constitution must be followed in order properly to determine whether he may or may not be entitled to the issuance of the writ.

■ Effective relief in a case involving a Jackson v. Denno question requires, as the Court of Appeals stated in *Gray*, that the petitioner receive a "full-scale" postconviction evidentiary hearing consistent with the federal standards articulated in that case. Petitioner properly presented that federal question to the Missouri courts in accordance with the available State postconviction procedure. The Supreme Court of Missouri has ruled that question on the merits. We find and conclude that the petitioner has exhausted his State court remedies in regard to his Jackson v. Denno claim.[2]

We conclude on the merits of that question for the reasons we shall state, that petitioner has not yet received the full-scale hearing required by Jackson v. Denno. We shall accordingly enter an appropriate order to allow the State of Missouri a reasonable time to afford petitioner an appropriate full-scale evidentiary hearing in the State trial court; or a new trial, failing either of which, petitioner would then be entitled to his release.

### III.

The factual circumstances which relate to petitioner's Jackson v. Denno claim are not in general dispute. The problems incident to this case arose primarily as a result of the failure of the petitioner's appointed postconviction counsel to direct the State's trial and appellate courts' attention to applicable federal standards.

Petitioner's *pro se* Rule 27.26 motion, among other things, alleged in paragraph 8 of the standard Missouri Rule 27.26 form as grounds for vacation of his sentence:

8(b) Denial of Fourteenth Amendment due process of law and Fifth Amendment privilege against self-incrimination in that involuntary statements, both oral and written, elicited when defendant was not competent to make a voluntary statement or competent to voluntarily waive his privilege against self-incrimination were admitted in evidence against him.

2. A second and independent ground for exhaustion is present in this case. The entire argument in the brief filed on petitioner's behalf in that appeal stated:

"APPELLANT ASSIGNS AS ERROR THE FAILURE OF THE TRIAL COURT TO EXCLUDE HIS INVOLUNTARY STATEMENTS MADE TO THE POLICE AND THAT THE RECEPTION OF THESE STATEMENTS IN EVIDENCE WERE IN VIOLATION OF DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE CONSTITUTION.

"It is appellant's position that even though these statements were introduced in evidence by his counsel, and even though his counsel was a lawyer of many years experience in the trial of criminal cases, in this instance the statements were so manifestly prejudicial that he did not receive the effective assistance from counsel as guaranteed

him by the Sixth Amendment of the Constitution and that the trial court, on its own motion, should have intervened and excluded these statements. That the failure of the trial court so to do deprived him of due process in violation of the Fourteenth Amendment of the Constitution.

"We have found no decision which we can cite in support of this assignment of error. Nevertheless, we urge its consideration by the court."

We find and conclude, for reasons fully stated in Gray v. Swenson, which involved a similar factual situation, that this Court is required to exercise its habeas jurisdiction under Section 2254(b) ; Title 28 U.S.C., in that the appellate representation of petitioner in his Rule 27.26 appeal was so inadequate that it constituted a circumstance which rendered the State corrective process ineffective to protect petitioner's federally protected rights. We so find and conclude.

Malloy v. Hogan, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653].

8(c) Denial of Fourteenth Amendment due process of law in that the defendant did not receive a fair hearing and a reliable determination of the voluntariness of the oral and written confessions out of the presence of the jury. Jackson v. Denno, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908].

8(d) Denial of Fourteenth Amendment due process of law in that the trial court failed to instruct the jury that they should determine the voluntariness of the oral and written statements allegedly made during custodial interrogation. Jackson v. Denno, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908] [Exh. E, pp. 3–4].

Petitioner, in paragraph 9 of the Missouri standard Rule 27.26 motion form, which requires a statement of the facts in support of the grounds alleged in paragraph 8, made the following factual allegations:[3]

During the trial of this cause, several witnesses testified that the defendant had been drinking and was intoxicated prior to the commission of the crime at 6 p.m., trans 194, 204, 215, 230, 277, 278, 280, and was intoxicated at the time of his arrest at 6:45 p.m., trans 175, 177, 179. During this 45 minute period the defendant drank some additional alcohol, trans 180, 281, 306, and was still under the influence of intoxicants when the interrogation commenced at 7:30 p.m., trans 325, 288, 291, 292, and when the alleged statement was reduced to writing and signed at the conclusion of custodial interrogation at 9:10 p.m., trans 316, 319.

During custodial interrogation the defendant was intoxicated and in such a state of shock as a result of the death of the victim, trans 187, 227, 239, 291, 292, 296, 303, 329, that he could not make a voluntary statement or competently waive his constitutional rights under the Fifth and Sixth Amendments, trans 288, 289, 291, 296, 319, 320, 329.

Defendant was interrogated for approximately 45 minutes while in the above described condition, trans 288 to 292, 324, 325, during which time he was subjected to compulsion, duress, coercion, harassment, intimidation and other police interrogation tactics for the purpose of obtaining a confession, trans 318 to 321 and 324 to 333.

Defendant was not advised of his constitutional right to the assistance of counsel and his Fifth Amendment privilege against self-incrimination until after the initial interrogation period was completed and after he had allegedly made an oral statement and agreed to sign a written statement, trans 319, 318, 324, 325.

\*   \*   \*   \*   \*   \*

During the trial of this cause the defendant was not given a preliminary hearing out of the presence of the jury on the admissibility of his alleged confessions. [Exh. E, pp. 4–6]

\*   \*   \*   \*   \*   \*

Examination of the transcript of petitioner's direct appeal (Exh. A) shows that the pages of the transcript cited by the petitioner generally support the allegations made by him in paragraph 9 of his Rule 27:26 motion.

Detailed discussion of that testimony is not necessary in light of the Attorney General's concession in his Rule 27.26 brief filed in the Supreme Court of Missouri that: "There is, of course, no dispute that the defendant had been drink-

---

3. In filling out paragraph 9, petitioner captioned his answer to that question "Facts *and* *argument* in support of grounds 8(a) to (f)." The factual allegations were clearly separated from the legal arguments contained in petitioner's paragraph 9 allegation. It is neither necessary to quote nor to refer to petitioner's legal argument other than to say that the arguments made were quite comparable to the legal arguments implicitly made in paragraph 8 above quoted in the text.

ing prior to the time the confession was obtained" (Exh. G, p. 10).[4]

Petitioner attached a sworn affidavit to his Rule 27.26 motion in which he stated that:

The first time I ever read the statement I was supposed to have signed was when I was on the witness stand it was handed to me by Mr. Hardy. I had forgotten all about a statement until right then. I do have a vague memory of signing some document at the police station after the officer read something to me, but I do not know what the document contained as I did not read it because I could not focus my eyes.

I had been drinking whiskey with beer chaser all that day. The last hard liquor I had to drink was just before my arrest. I drank almost ½ pint of whiskey from a bottle in my truck.

I do not remember much about being questioned except that the officer who asked the questions kept after me and didn't seem satisfied with any answer I gave him. He badgered me and I would have agreed to anything he said.

I do not remember telling him that Barbara stood me up or anything else in that statement. If he read that particular statement to me, I did not know it then and I do not remember it now.

To the best of my knowledge he never did advise me of my rights. [Exh. E, pp. 11–12]

In his Rule 27.26 motion, petitioner specifically requested that eight named witnesses be subpoenaed for the purpose of giving testimony relevant to the issues presented in paragraph 9 of his motion and the affidavit attached thereto. The direct appeal transcript shows that all of the witnesses listed, with the important exception of Sergeant A. Jenkins of No. 3 Detective Unit, Sheffield Police Station, Kansas City, Missouri, had in fact been trial witnesses who, in a more or less incidental way, had testified that petitioner had been drinking *before* the homicide occurred. Sergeant Jenkins, on the other hand, was a potential Rule 27.26 witness who did not testify at the trial and who obviously was in a position to testify concerning petitioner's condition *at the time* his statement was taken. The trial transcript makes clear that Sergeant Jenkins was present during the time the statement was taken and that he signed the statement as a witness [Exh. A, pp. 330–331].

The trial court appointed J. Arnot Hill, Chief Defender, Legal Aid and Public Defender Society of Kansas City to represent petitioner in connection with his Rule 27.26 motion. Mr. Hill had served as petitioner's appointed counsel at the trial. He did not, however, represent petitioner at the Rule 27.26 hearing. Although the record does not reflect any formal appointment by the trial court, it is undisputed that another member of the Legal Aid and Defender Society staff actually appeared as counsel for petitioner at the Rule 27.26 hearing.

---

4. Detective Witcig, one of the police officers who took petitioner's statement testified at trial that at the time of the interview petitioner "was not drunk enough to be arrested for walking on the streets but was too drunk to drive a car" (Exh. A, p. 329). When Detective Witcig was asked whether he considered the petitioner was drunk at the time of the interview, he stated: "No, but let me qualify this. In my mind in the way I think of a drunk, having been a police officer, I always put this sort of a valuation on it. I have been a police officer for thirteen years, and whether a person

is drunk or not, I always value it like this. If he was drunk enough for me to put in jail, if I saw him in the street as a police officer would he be intoxicated enough that I think he should be incarcerated. This is the personal method I use in determining the man's ability, and I would not have put Mr. Renfro in jail. He had been drinking, it was evident that he had been drinking. He was too drunk to be driving an automobile, this sort of thing, but he was not as intoxicated as possibly a lot of people have been." [Exh. A. p. 319]

The manner in which petitioner's Jackson v. Denno contention was handled at the Rule 27.26 hearing establishes that petitioner was apparently more familiar with the factual and legal questions presented than was his Rule 27.26 counsel. When petitioner was first on the stand, the necessity of calling the witnesses the petitioner had listed was the subject of the following direct examination by his appointed counsel:

Q. You haven't had no contact with any of the witnesses?

A. No, sir.

Q. So, in other words, if anyone was brought in, you don't know that they would testify—you don't know what they might testify to?

A. That is right. [Exh. E, pp. 28]

There is no suggestion in the record how petitioner, rather than his appointed counsel, was going to interview possible Rule 27.26 witnesses while confined in the Missouri penitentiary. The final questions and answers on petitioner's direct examination the first time he was on the stand were as follows:

Q. Mr. Renfro, I think I have covered your objections to the statement, and you have stated what you want to bring out as far as these witnesses are concerned, and there are certain things you can bring out and certain things you can't. In other words, you can't think that you got a bad trial and now you can have a brand new trial. You have to have some *valid* objections and there are certain things you can't bring out in a 27.26 hearing which I am not going to explain on the record, but is there anything else that you want to complain about?

A. *That confession is it.*

Q. The confession is it?

A. *That is right.* [Emphasis ours] [Exh. E, p. 29]

The next day the State called Detective Witcig as its only witness.[5] After he had testified, petitioner was again called to the stand and testified as follows:

Q. Do you remember talking to the officer?

A. I remember talking to somebody, I don't know who it was.

Q. Is there some reason you wouldn't have remembered it?

A. I was so drunk I didn't even know where I was at. I had been drinking all day and drank after the crime.

Q. Did you have something to drink before you talked to the officer after the crime?

A. I sure did. I told him I had been to a tavern and I had been drinking, and I had whiskey in my pickup truck and I drank it. I was sitting in this restaurant. I don't even remember being arrested. He said I got up and started running, but I don't even remember it, and that is the truth, if I ever told it.

Q. You have covered this part of it, and I want to give you one more opportunity, the confession, this statement here, that is the main thing you are objecting to and that is the main point you raised in this 27.26 motion, isn't that correct?

A. I think so.

Q. And you have told us here yesterday and today all objections you have about this statement?

A. *Well, I think we should have them witnesses to where I could have proved that I was drunk which*

5. Consistent with its refusal to call Sergeant Jenkins at petitioner's request, the State did not, on its own volition, call Sergeant Jenkins, the other police officer who was present throughout the petitioner's interrogation by Detective Witcig and who signed petitioner's statement as a witness.

*they all knew I was, and even the officer I think knew I was.*

Q. You mean the one that testified here?

A. Yes, I think he knew it very well. Everybody else knew it, I don't see why he wouldn't have. [Emphasis ours.] [Exh. E, pp. 41–42]

After petitioner's testimony and that of Detective Wictig had been adduced, the following occurred:

THE COURT: All right, gentlemen, I have read the transcript in this case, the transcript on the trial so far as it bears on the matters raised here, and I see no reason to take this matter under advisement unless counsel want to brief it. Do you want to brief it? [Exh. E, p. 44]

Both counsel for the State and petitioner's counsel replied in the negative. The trial judge therefore immediately dictated his view of the case into the record. The trial judge did not file any formal findings of fact or state any conclusions of law as required by amended Rule 27.26 and as construed by the Supreme Court of Missouri in *Stidham*, *Crosswhite*, and *Fritz*. In regard to petitioner's request to have witnesses summoned on his behalf, the trial court stated:

Now, there is some indication that the petitioner desired additional witnesses to be here at this 27.26 hearing to testify with respect to various matters. As I understand it, he says that some of these witnesses would testify that he was intoxicated. *All of the witnesses who he now says he would like to have testify did testify at the trial,* and I find no merit to the position that he now asserts. [Emphasis ours.] [Exh. E, pp. 49–50]

Neither petitioner's counsel nor counsel for the State directed the trial court's attention to the fact that petitioner had requested that Sergeant Jenkins be called to testify or to the fact that Sergeant Jenkins had not in fact testified at the trial. It was, of course, apparent that petitioner's postconviction claim was not based on the allegation that he had been drinking *before* the offense was committed; that fact was never in dispute. The pertinent and crucial postconviction questions, placed in issue by the petitioner's Rule 27.26 motion, supported by his sworn affidavit and by his postconviction testimony, was how much he had been drinking before his interview with Detective Witcig and Sergeant Jenkins and whether his drinking, both before and after the offense, affected his ability to waive his federally protected rights and to give a voluntary statement.

Those questions were not appropriately explored at the Rule 27.26 hearing.

## IV.

The rationale upon which the Supreme Court of Missouri affirmed the trial court's denial of postconviction relief was not consistent with applicable federal standards. The Supreme Court of Missouri construed petitioner's assignment of error in the Rule 27.26 appeal as presenting two federal questions: (1) whether petitioner's statement was admitted "in violation of due process as guaranteed by the Fourteenth Amendment of the Constitution" and (2) whether petitioner received "the effective assistance from counsel as guaranteed him by the Sixth Amendment." (445 S.W.2d at 279) The Supreme Court of Missouri, however, refused to consider either of those federal questions definitively, stating that "the state has briefed and argued every facet of this nebulous and unique assignment of error, but tempting as it may be to examine the claims in detail, it is not necessary to do so" (445 S.W.2d at 279).

The Supreme Court of Missouri accepted the trial court's legal conclusion that "it is obvious from the manner in which this testimony came in and the nature of handling the statement was not such that any Jackson v. Denno type of hearing would be required" and by its approval of the trial court's comment

that "I am satisfied that Mr. Hill did what he did not because he overlooked any possible claim that the statement was not voluntary, but because it was a part of the trial strategy to attempt to establish that the defendant was intoxicated at the time the offense occurred" (445 S.W.2d at pp. 279–280).

As an alternate ground for decision, the Supreme Court of Missouri stated:

> Aside from the problem of defendant's waiver of a separate hearing as to the voluntariness of his statement or the duty of the court to intervene willy-nilly, and aside from the defendant's duty to timely object and procedurally protect his Fourteenth Amendment or other constitutional rights (State v. Meiers, Mo., 412 S.W.2d 478), the findings of the trial court as to the effectiveness of counsel and the voluntariness of any statement appellant may have made are indeed supported by this record and the consequence is that he is entitled to no relief in this court.[6]  [445 S.W.2d at 280]

In regard "to the manner in which this testimony came in," upon which the Supreme Court based its conclusion that counsel's failure to object constituted a "waiver" of his federally protected rights, the Supreme Court of Missouri stated:

> Renfro's statement to the police was first mentioned in the state's cross-examination of him—the statement was being used "for the purpose of impeachment." Defendant's counsel objected to the prosecutor's "reading from the defendant's statement piecemeal. I think the entire thing should go in." Defendant's counsel, as the court found, made no other objection

to the introduction of the statement. [445 S.W.2d at 279]

We, of course, defer to that reliably found fact. But we cannot accept the Supreme Court of Missouri's conclusion of law that defense counsel's failure to object can properly be held, under controlling federal law, to be a waiver of petitioner's federally protected rights as articulated in Jackson v. Denno.

Nor can we accept the Supreme Court of Missouri's approval of the trial court's finding that defense counsel's failure to object was a "part of the trial strategy to attempt to establish that the defendant was intoxicated at the time of the offense occurred" for the reason there is no evidence to support such a finding. Indeed, all of the evidence is to the contrary.

Petitioner's statement, of course, could not have been introduced to establish that the petitioner was intoxicated at the time of the offense because there was nothing in that statement which supported such an idea. Equally important, both in defense counsel's opening statement (Exh. A, p. 263) and in his argument to the jury (Exh. A, pp. 362–374) it is clear that petitioner's sole theory of defense was that the shooting was accidental. Any and all mention of drinking made by either petitioner's counsel or by the prosecuting attorney in both their opening statements and in their final arguments was wholly incidental to that single defense and neither suggested that the shooting was an accident *because* petitioner had been drinking. The same thing is true of the testimony of the witnesses of the trial. See the pages of the trial transcript (Exh. A) cited by petitioner in his Rule 27.26 motion.

6. Judge Finch, in his concurring opinion, stated "I concur in the principal opinion herein except that portion of the final paragraph which mentions waiver by defendant of a separate hearing and also refers to a duty on the part of defendant to object and protect his constitutional rights. I do not understand that the trial court in making its findings and conclusions relied on such grounds, and I would not rely thereon. In my view, they are not necessary to our opinion affirming the trial court's findings, conclusions and judgment as not being clearly erroneous." [445 S.W.2d at 280]

At trial, the defense contended that the physical and other circumstances established that petitioner had not fired at the deceased, that the gun had gone off in the course of a struggle petitioner was having with two other people, and that the bullet must have hit something before it hit the deceased. Defense counsel argued that "the only possible explanation is a ricochet. * * * It would have to be a ricochet and a ricochet would be an accident" [Exh. A, p. 364].[7]

The parties were in complete agreement that accident was the one and only defense to the charge. Defense counsel never contended that the petitioner was intoxicated at the time of the offense. He explicitly stated to the jury that "the Court has given you an instruction that drunkenness is not a defense and doesn't mitigate the event. *We have not advanced it as a defense.*" [Exh. A, p. 370] And without objection or challenge, the prosecuting attorney repeatedly stated to the jury that "there is one defense to a case like this, as you well know, and that is accident," [Exh. A, p. 375] and that "the only defense to this case is ricochet" [Exh. A, p. 379].

In light of the circumstances stated, we cannot properly defer to the trial court finding, accepted by the Supreme Court of Missouri, that it was a part of defense counsel's "trial strategy to attempt to establish that the defendant was intoxicated at the time the offense occurred" [445 S.W.2d at 280].

The statement received in evidence in Gray v. Swenson was received under not dissimilar circumstances from those under which petitioner's statement was received in this case. See 302 F.Supp. at 1167, footnote 4. In both cases defense counsel indicated that they would make

no objection if the statement was read in its entirety. And no objection was in fact made in either case. When the Rule 27.26 appeal in *Gray* reached the Supreme Court of Missouri, that court, as it did in this case, applied a State rule of "waiver" as articulated in State v. Meiers (Mo.Sup.Ct., Div. 1, 1967) 412 S.W.2d 478. As pointed out by the Court of Appeals in *Gray*, the Supreme Court of Missouri in its opinion in State v. Gray, 432 S.W.2d 593, "refers to the Jackson v. Denno rule but does not reach such issue for the stated reason that the court determined Gray had waived any right to challenge the voluntariness of his confession."

The Supreme Court of Missouri affirmed the trial court's denial of petitioner's Rule 27.26 motion in this case, as it did earlier in *Gray*, on precisely the same waiver ground articulated in State v. Meiers. Indeed, it did so in spite of the fact that the Attorney General had directed attention to Gray v. Swenson and to the Supreme Court of the United States and Eighth Circuit Court of Appeals cases cited in *Gray* in his brief filed in connection with petitioner's Rule 27.26 appeal. See Exhibit G, page 9.

We must again find and conclude in this case, as we did in *Gray*, that "the requirements of that State procedural rule fall far short of the federal standard of waiver articulated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963)." In this case, as in *Gray*, we are required to find and conclude that there is a total absence of any evidence which could be said to support a finding that, in the language of Fay v. Noia, the petitioner "after consultation with competent counsel * * * under-

7. The ricochet-accident argument was developed throughout defense counsel's final argument. See Exh. A, pp. 362–370. Typical of the other portions of that argument is the following which appears on page 365 of Exhibit A: "Here you have these two young woman struggling with this defendant out in the hall with the

mother [the deceased] being present. * * * unless there was a ricochet, she could not possibly have been injured in the side of her head. * * * Yet she is wounded back here. If she is looking at the struggle, then there had to be a ricochet." [Exh. A, p. 365]

standingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts." See and compare the paramount function of counsel for the defense as recently discussed in Brady v. United States, 397 U. S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Petitioner's trial counsel's failure to object at trial to the admission of what may have been a constitutionally invalid and therefore inadmissible statement does not foreclose an appropriate postconviction Jackson v. Denno inquiry. See Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Mitchell v. Stephens, 353 F.2d 129, 145 (8th Cir., 1965), cert. denied 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042; and State of Minnesota ex rel. Holscher v. Tahash, 364 F.2d 922, 927 (8th Cir., 1966). See also Judge Donald Lay's "Problems of Federal Habeas Corpus," 45 F.R.D. 45, 55.

It cannot fairly be said that the petitioner received the "full-scale" evidentiary hearing required by Jackson v. Denno. In *Frankum*, in determining that the postconviction hearing was inadequate and not in accord with controlling federal standards, we noted that witnesses whom the petitioner specifically requested to be called were not in fact called to testify. In this case, as is true in many, if not most, cases in which a Jackson v. Denno question is presented, the admissibility of the petitioner's statement at trial was dependent upon whether petitioner had in fact validly waived federally protected rights under the standards articulated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). No preliminary hearing out of the presence of the jury was held in this case in regard to that question as required by Jackson v. Denno. Nor was the jury given an appropriate voluntariness instruction.[8]

If petitioner's postconviction testimony was true, and if he was in fact as drunk at the time of his statement interview as he now claims, his statement clearly would not have been admissible. See Unsworth v. Gladden, 261 F.Supp. 897 (D.Ore., 1966). Petitioner specifically requested that Sergeant Jenkins, a witness who obviously was in a position to have personal knowledge of petitioner's condition at the time his statement was taken, be called to testify. No one knows what Sergeant Jenkins would have testified if he had been called as a witness. No one can say whether the trial judge's view of the case would or would not have been changed if he had heard Sergeant Jenkins' testimony.

■ One can and must say that a postconviction hearing which does not require the testimony of an obviously key witness, particularly when the attendance of such witness was specifically requested by the petitioner, is not the sort of full-scale evidentiary hearing required by Jackson v. Denno. And this is true regardless of what the other seven witnesses requested by petitioner may have said if they had been called to the stand as the petitioner requested.[9]

8. Defense counsel did not request and the jury, on the trial court's own motion (see Missouri Criminal Rule 26.02(6) and State v. Haygood (Sup.Ct.Mo., Div. 2, 1967), 411 S.W.2d 230) was not given any voluntariness instruction. Defense counsel nevertheless argued: "He simply at this point didn't care what happened to him. He was under arrest. The officer wanted him to give a statement and he gave a statement, and he didn't care what the officer wrote down." [Exh. A, p. 359]

9. The importance of petitioner's statement to the State's case cannot properly be disregarded. The prosecutor read extensively from the statement in his argument to the jury to refute petitioner's accident defense. For only one example of the effective use to which petitioner's statement was put, the prosecuting at-

The State's failure to call Sergeant Jenkins to the stand, either as requested by petitioner, or on its own motion, reflects the State's failure to recognize the possible applicability of principles articulated in Sims v. Georgia, 389 U.S. 404, 496, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), to the petitioner's Jackson v. Denno postconviction hearing.[10] See our full discussion of that question in Gray v. Swenson, 302 F.Supp. at 1166.

Under all the facts and circumstances, we find and conclude that the petitioner did not receive an error-free full-scale postconviction evidentiary hearing in the State trial court and that petitioner's federally protected rights as enunciated in Jackson v. Denno were violated. Petitioner is therefore entitled to appropriate habeas corpus relief.

## V.

The problems concerning appropriate relief with which we were concerned in Gray v. Swenson, see 302 F.Supp. at 1169–1172, were definitively resolved by the Supreme Court of the United States in Sigler v. Parker, 396 U.S. 482, 483, 484, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970). The order granting federal habeas relief entered in *Gray* was under direct attack on the appeal taken in that case to the Court of Appeals. The Court of Appeals determined in *Gray* that "the remedy adopted by the trial court conforms to the teaching of the Supreme Court in Sigler v. Parker. \* \* \*" We shall therefore use substantially the same language in our order in this case as we used in *Gray*.

Accordingly, and for the reasons stated, it is

Ordered that the petitioner be released from his present confinement in the Missouri Department of Corrections and be permanently discharged from custody at the end of ninety (90) days from the date of this order, unless within that time he has been afforded an appropriate plenary hearing in the State trial court in accordance with the standards articulated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, on the issue of the voluntariness of *the statement admitted in evidence in his original trial*; or, in the alternative, he has been granted a new trial. It is further

Ordered that such hearing shall be conducted in full compliance with the precedure and requirements of Missouri Supreme Court Rule 27.26, as that rule has been construed by the Supreme Court of Missouri in *Stidham, Crosswhite*, and *Fritz*, it being contemplated that petitioner may be required to include in his amended Rule 27.26 motion all additional State and federal claims, including but not limited to the ineffective assistance of counsel claim, in order that piecemeal litigation of petitioner's postconviction claims be avoided. It is further

Ordered that this Court retain jurisdiction of this cause pending further developments. The Attorney General shall keep this Court advised of any and all action taken by the State of Missouri in connection with this order and shall, if necessary, make appropriate application for any extension of the ninety (90) day period of time provided before the expiration of said period. An appropriate extension will be granted for good cause shown.

torney argued: "Listen to this next sentence in this statement. Here is justification for murdering her. Here is his justification the day it happened. He said, 'I told her I had a gun and she said I didn't have guts enough to pull the trigger.' That is his justification. He says, 'I raised the gun and fired one shot and then I took off. I ran downstairs.' " [Exh. A, p. 356]

10. In Sims v. Georgia, the Supreme Court stated that: "The State had every opportunity to offer the police officers \* \* \* to contradict petitioner's version of the events" and concluded that "[i]ts failure to do so when given a second chance lends support to the conclusion that their testimony would not, in fact, have rebutted petitioner's."